THE PEOPLE *ex rel.* P. J. Lucey, Attorney General, Relator, *vs.* JOHN S. STONECIPHER, Respondent.

*Opinion filed February 16, 1916.*

1. DISBARMENT—*depositions are competent evidence in disbarment procceding.* A proceeding to strike the name of an attorney from the roll of attorneys is not a criminal prosecution in which the accused has the right to meet the witnesses face to face, and it is proper, in order to sustain a count of the information charging the forging of the name of a person to a release of a mortgage, to admit the deposition of such person in evidence.

2. SAME—*power to disbar attorney should be exercised according to rules of law.* The power to disbar an attorney should be exercised with sound and just discretion, according to the same rules of law that govern in the determination of other civil rights which are brought before the court.

3. SAME—*what is ground for disbarring attorney.* An attorney who converts to his own use notes left with him for collection or safe keeping, who obtains a loan for himself by falsely representing that he wants the money for a client who was financially responsible and would give a note, and who uses, as collateral security, a certain note without delivering a deed to the makers of the note, as he had agreed to do if he used the note to raise money, is guilty of unprofessional conduct and should be disbarred.

INFORMATION to disbar.

P. J. LUCEY, Attorney General, GEORGE P. RAMSEY, and D. E. DETRICH, for relator.

E. D. TELFORD, D. D. HAYNIE, GEORGE W. SMITH, J. L. HALEY, and ALBERT M. ROSE, for respondent.

Mr. JUSTICE CRAIG delivered the opinion of the court:

An information was filed in this court at the December term thereof, 1914, on the relation of the Attorney General, to disbar the respondent. The first count of said information charges the respondent with unethical, unprofessional and fraudulent conduct in the conversion of money and securities, the property of Demalian Justice. The second count charges respondent with forging the name of M. C. Stonecipher to the release of a certain mortgage recorded in book 34 of mortgages, at page 533, in the office of the recorder in and for the county of Marion, in the State of Illinois. A rule was entered on the respondent to show cause by the first day of the February term of court, 1915. Respondent answered to the said term, denying the allegations of the first and second counts of the information, and the court ordered said cause referred to a commissioner to take the proofs and report his conclusions of law and fact. At the April term, 1915, leave of court was obtained to file five additional counts to the original information, the first of which additional counts charges respondent with contriving to injure and defraud the Salem Building and Loan Association by fraudulently inducing said association to cash certain shares of stock standing on the books of the association in his name but which he had assigned to Henry L. Allmon. The second additional count charges the respondent with fraudulently contriving to injure Eugene Irwin by inducing him to let the respondent have a certain sum of money upon the representation that he wanted it for a client who was good financially and who would give his promissory note for the amount and that respondent would sign the note as security; that the representation of wanting said loan for a client was false; that

he never procured the signature of any client to the note given for the payment of said sum of money and that respondent has not paid same. The third additional count charges respondent with fraudulently contriving to injure W. O. Roddy and Etta K. Roddy, his wife, by inducing them to execute and deliver to the respondent their joint promissory note for the sum of $4000 upon the promise that the respondent would then and there deliver to said Roddy, as security for the payment of such note, a deed to certain lands situated in the county of Marion which respondent owned; that upon obtaining possession of said note the respondent failed and neglected to deliver to said Roddy a deed, as promised, to secure the payment of same, and fraudulently assigned said note, so executed by said Roddy and wife, to the Bridgeport State Bank without the knowledge or consent of said Roddy and wife. The fourth additional count charges that the respondent, at the April term, 1913, of the circuit court in and for the county of Washington, in the State of Illinois, was indicted by the grand jury, charged with forging the name of Demalian Justice to a certain promissory note dated May 25, 1912, for the sum of $2000, payable to the Farmers' and Merchants' National Bank of Nashville, Illinois. The fifth additional count charges that the respondent, at the September term, 1914, of the circuit court in and for the county of Marion, in the State of Illinois, was indicted, charged with forging the name of M. C. Stonecipher to the release of a certain mortgage recorded in book 34 of mortgages, at page 533, in the office of the recorder in and for said county. It was also ordered by the court that the respondent answer said additional counts by the first day of the June term, 1915. At the last mentioned term the respondent made answer, denying the allegations set out in the additional counts, and the court at the same term entered an order that the commissioner before that time appointed proceed to take evidence in said cause, and fixed the time for closing proofs.

Testimony had been taken both by the relator and respondent upon the original information prior to the filing of the additional counts. Subsequent to the June term, 1915, testimony was taken on the additional counts in behalf of the relator and respondent in pursuance of the order of court entered at that term, and the commissioner filed his report of findings of facts and conclusions of law, finding that the testimony sustains the first count in the original information and the first, second and third additional counts. He finds the second count of the original information not sustained by competent evidence, and finds that the evidence fails to support the fourth and fifth additional counts, and recommends that the license of the respondent to practice law be revoked and that his name be stricken from the roll of attorneys of this court. Respondent has filed exceptions to the findings of the commissioner, and the relator has filed cross-exceptions to the findings of the commissioner on the second count of the original information.

The only question in the case is whether the conclusions of the master are sustained by the evidence.

As to the first count of the original information, the undisputed facts show that Demalian Justice, who was a resident of Marion county, Illinois, in May, 1912, contemplated making an extended visit to the State of Tennessee. On May 13, 1912, he placed in the hands of respondent, who was an attorney at law and who was also at that time engaged in the banking business in Salem under the name of Citizens' Bank of Salem, Illinois, certain valuable papers, including a number of promissory notes executed by various parties and payable to said Justice, some of them secured by mortgages, which notes he indorsed in blank at the time he delivered them to respondent. About June 6, 1912, respondent borrowed $3000 from the Bridgeport State Bank of Bridgeport, Illinois, and deposited certain of the notes with said bank as collateral security for said loan. Justice returned to Salem in August and asked

that his notes and papers be returned to him but respondent put him off on one pretext or another, and certain of the notes and mortgages and a school order for $52.50 were not returned, among them a note secured by mortgage by G. M. Abney for $225, one of W. A. Lowry for $150, one of Arthur Reed for $245, one of Joe Standiford for $500, one of Ed. Beck for $300, one of Albert Jourdan for $400, and one of Rose White for $14. It also appears from the evidence that respondent collected the interest on some of the notes that were left with him while they were in his possession and did not account to Justice therefor. The dispute between the parties is the purpose for which these notes were delivered to the respondent. Justice testified that they were delivered to the respondent for safe keeping, only, and that he placed them in the bank of the respondent at the latter's suggestion so that they would be safe, and that respondent was to collect the interest and pay such amount as might be necessary to the wife of Justice during his absence and to account to him for the balance. He also testified that he indorsed the notes in blank at the suggestion of respondent so the authority of the latter to collect from the makers of the notes would not be questioned. Respondent, who was a witness in his own behalf, does not deny the receipt of these notes and other papers but claims that he took them on the request of Justice, and that Justice informed him at the time that he could use them for collateral security in getting loans if he desired, and that he put these notes up as collateral security for the loan which he procured from the Bridgeport State Bank in accordance with the authority given him by Justice so to do. This is his sole justification for converting the property entrusted to his care. Five witnesses testified that the reputation of Justice for truth and veracity was bad and ten witnesses testified that such reputation was good. The story told by the respondent was an improbable one. He had been acquainted with Justice for a number of years and had acted

to some extent as his attorney. It appears that the notes
and other papers were to be placed by respondent in a safety
deposit drawer in the bank conducted by him by themselves,
as would ordinarily be done where a person delivers papers
··of that kind to a banker for safe keeping. At the time of
the transaction respondent gave to Justice a receipt, which
is not disputed and which is as follows:

"$5439.50.                    · SALEM, ILL., *May 13, 1912.*
    "Received of Demalian Justice five thousand four hundred
thirty-nine 30-100 dollars.· Deeds to all my real estate, including
insurance policies on same. For collection, safe keeping, etc.
    "No............          JOHN S. STONECIPHER."

While the receipt purports to be for a sum of money,
there is no question but that it was not for money but was
for promissory notes and other valuable papers, including
the promissory notes described, and the words "for collec-
tion, safe keeping, etc.," on the receipt signed by respondent,
are evidence in writing supporting the testimony of Justice
as to the character of the transaction; that the notes and
other papers were left with respondent as such notes and
papers are frequently left with bankers for safe keeping
and collection, and that the notes, or the proceeds thereof,
were the property of the owner and were to be returned
or accounted for. · The respondent hypothecated and appro-
priated these notes to his own use and failed to return
them. The finding of the commissioner on this count is
sustained by the evidence.

As to the finding of the commissioner on the first addi-
tional count, it appears from the evidence that respondent
at one time was the owner and had possession of certain
shares or certificates of stock in the Salem Building and
Loan Association which he delivered to Henry L. Allmon
as collateral security for the payment of two promissory
notes executed by him to said Allmon. He indorsed two
of these certificates. Allmon subsequently died. After his
death respondent induced the secretary of the association

to pay him the value of these certificates without producing and returning them, and when the heirs of the assignee applied to the secretary of the homestead and loan association to cash said certificates they were so informed. The only excuse given by respondent for his action is that he did not know, when he cashed these certificates, that he had delivered them to Henry L. Allmon as security for the loan obtained from him, and when advised by one of the heirs, M. O. Allmon, that the certificates were held as security, respondent offered to give other security. This was denied by M. O. Allmon.

The finding of the commissioner as to the second additional count is sustained by the testimony of Eugene Irwin and his father. Respondent claims that the loan was made by Irwin to the respondent, only, and was so understood by both of them, but the preponderance of the evidence is against the respondent. If it were true, as charged, that he obtained this money under the pretext that it was for another party who would furnish a note and who was perfectly good and that respondent should also sign the note, when, in fact, he desired it for himself and gave his own note which could not be collected, then the evidence sustains the charge.

The third additional count was proven by the testimony of W. O. Roddy. Respondent admitted that Roddy and his wife delivered to him their promissory note for $4000 upon the agreement that if he should need to use the note to raise money he would deliver to them a deed for certain land. He also admits that afterwards, without delivering the deed to Roddy and his wife, he assigned the note they had given him to the Bridgeport State Bank as collateral security for his own note to that bank. His explanation of this is, that this note was assigned with other notes inadvertently and not intentionally, and that he tried to get the note back from the bank by sending another note to take its place but that the bank refused to give up the Roddy

note. Roddy swears that he received two notices from the Bridgeport State Bank that the bank held his note, and that he went to the bank and there saw his note, and he stated this fact to respondent, who told him that the note had been assigned to the bank by mistake and that he would get it back. The commissioner found that the respondent made no effort to get the note back from the bank until after the bank had sent Roddy two notices and Roddy had ascertained by a visit to the bank that it actually held the note and he had charged respondent with assigning said note without authority. The commissioner found, on these facts, that the assignment by respondent of the note to the Bridgeport State Bank without turning over to Roddy and his wife the deed to land as agreed was a fraudulent assignment and conversion of the note to his own use. The Roddy note, however, was paid by someone and returned to Roddy a few days before the taking of evidence.

As to the cross-exceptions by the relator to the finding of the commissioner on the second original count, which charged that respondent had forged the name of M. C. Stonecipher to a release on the margin of the record of a mortgage of record in Marion county, the finding of the commissioner seems to be based upon the theory that it was a criminal charge, and that the same degree and character of evidence was necessary to sustain such charge as would be necessary to convict respondent under an indictment for forgery, and that accordingly the deposition of the owner of the mortgage whose name it was alleged in the second count of the original information was forged to the release was not properly received in evidence. This proceeding is an original one in this court, and the deposition of M. C. Stonecipher was taken in the State of Nebraska pursuant to a commission sued out from the office of the clerk of this court on notice duly given the respondent. A proceeding to strike the name of an attorney from the roll of attorneys is not a criminal prosecution, and while the respondent

271 — 33

in such a proceeding has the full right to examine witnesses and charges against him must be sustained by competent evidence, we have never held that the rules of criminal law prevail in taking evidence in such proceedings. In criminal prosecutions the accused has the right to meet the witnesses face to face by reason of the provisions of section 9 of article 2 of the constitution. The procedure followed in the case at bar was the same as in other disbarment proceedings and was in accordance with the statute and the rules of this court, and, as pointed out in *Moutray* v. *People,* 162 Ill. 194, the power to disbar an attorney should be exercised with sound and just discretion, according to the same rules of law which govern in the determination of other civil rights which are brought before the court for disposal. In *People* v. *Amos,* 246 Ill. 299, it is said, on page 302 of the opinion: "On an application for the disbarment of an attorney he is entitled to a trial before the court upon evidence taken according to the rules of the common law." No other objection was made to the deposition or to the notice or manner of taking the same. It should have been admitted and considered by the commissioner. It is not necessary to make any finding, however, on this count. If the count was not sustained by the evidence it would have made no difference in the final recommendation of the commissioner, and if it was sustained it would only be cumulative.

We are of the opinion, after a careful examination of all the evidence in the case, that the commissioner was justified in his findings and recommendations, and they will accordingly be approved and the rule against respondent will be made absolute. *Rule made absolute.*