BAR ASSOCIATION OF THE CITY OF BOSTON vs. PETER J. CASEY.

Suffolk.    December 4, 1911. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Attorney at Law.    Disbarment Proceedings.*

A proceeding for disbarment is an exercise by the court of its jurisdiction to deal with the alleged misconduct of an officer of the court, and an incorporated bar association which is the petitioner in such a proceeding is not a party to a suit but merely calls the attention of the court to the alleged misconduct of the attorney, so that honorary membership in the petitioning association does not disqualify a judge from sitting in the case.

HAMMOND, J.    This was a petition filed in the Superior Court by the Bar Association of the City of Boston for the disbarment of the respondent for alleged misconduct therein set forth.    In response to an order of notice the respondent appeared and filed an answer.    There was a hearing on the merits, and on April 9, 1906, an order of disbarment was entered.    The respondent appealed, and at his request the case was reported to this court for the determination of the question whether under the findings of fact made by the judge "the order of disbarment was justified as a matter of law."    After full argument in this court the order of disbarment was affirmed.    196 Mass. 100.    Thereupon the respondent filed in the Superior Court a motion to vacate the order of disbarment and in arrest of judgment, and afterwards a motion for a new trial and several other motions which were heard and determined adversely to the respondent; and upon appeals, seven in number, the respondent again brought the case to this court where, after due hearing, the orders appealed from were all affirmed and it was ordered that judgment be entered in the Superior Court in accordance with the order of disbarment of April 9, 1906.    204 Mass. 331.    After the issue of the rescript and before final judgment in the Superior Court, the respondent filed there a motion to set aside all orders, decisions and findings theretofore made in that court, and also a motion in arrest of judgment.

At the hearing on these motions it appeared that Mr. Justice

Fessenden, who issued the original order to show cause; Mr. Justice Fox, who heard the cause on the merits, made the finding thereon and the order of disbarment of April 9, 1906; and Mr. Justice Pierce, who made a certain order as to the disbarment, were respectively, at the times in which they thus acted, honorary members of the Bar Association of the City of Boston, in whose name the petition was filed. The respondent in substance asked the court to rule that these several judges being such members were thereby disqualified to sit in the case. The court refused so to rule and ruled that upon all the evidence neither of these judges "was disqualified to act and find as . . . [he] . . . did find, by reason of interest or otherwise." The respondent also asked for a ruling "that all the orders and findings in the proceedings in the said petition are null and void." This also the court refused to give, and denied the motion. To these refusals to rule and to the ruling actually made the respondent excepted. It is doubtful whether this last request, fairly construed, is intended to cover any other ground for the nullity of the acts of the court except that arising from the alleged disqualification of the judges. The respondent's brief, however, touches upon some other reasons why the acts are null and void, but even if he relies upon any such other reasons they raise only such questions as have been heretofore determined in this case, or such as are no longer open to him at this stage. The only question open to him now is whether the judges being honorary members of the incorporated bar association were thereby disqualified to act.

It is urged by the prosecution that even this is not now open to him; that, notwithstanding his affidavit that he was ignorant of the relation until after the last rescript from this court, he has not shown due diligence in ascertaining the facts about the association and the relation of the judges to it. But we are not inclined to decide the case upon so narrow a ground, even if it were possible to do so. The question is likely to arise in the future, and for the information and guidance of the members of the courts who may be called to act in similar cases it is better that it should be squarely met, duly considered and finally settled.

There is substantially no dispute about the material facts. The association was incorporated under the laws of this Commonwealth. St. 1886, c. 22. This statute (§ 1) provides that the

members of the Bar Association of the City of Boston heretofore an unincorporated association, and all persons who shall hereafter be associated with them, shall be a body corporate under the same name, "for the purpose of promoting social intercourse among the members of the bar; of insuring conformity to a high standard of professional duty; and of making the practice of the law efficient in the administration of justice;" that (§ 2) for attaining the objects and carrying into effect the purposes of the corporation it may acquire, receive and hold real and personal estate, including a suitable building, library and furniture, not exceeding $500,000 in value; that (§ 3) it may adopt a constitution, by-laws and rules for the admission, government, suspension and expulsion of its members, the collection of fees, the election of officers and defining their duties, and for the management of the affairs of the corporation; and that (§ 4) all interest of any member shall terminate and vest in the corporation upon his ceasing to be a member "by death, resignation, expulsion or otherwise."

By the constitution it appears that (art. 3) every member must be an attorney. The constitution further provides (art. 4) for the appointment of various officers and committees, among which is a committee on grievances, and defines their respective duties; also that (art. 6) there shall be an admission fee and an annual fee. The method of dealing with a person accused of professional misconduct, whether or not he be a member of the association, is set out partly in the constitution and partly in the by-laws. So far as material to this case it is substantially as follows: The complaint is not laid before the association but is referred to the committee on grievances consisting of seven members, who after such hearing as they deem expedient shall report the facts and their recommendations to the council, a larger committee consisting of at least twenty-one regular members including the president, vice-president, treasurer and secretary, and shall thereupon institute such proceedings against offenders as the council may order. The committee on grievances shall keep a record of their proceedings, which shall not be shown to any person not a member of the association, "except that any member of the bar not a member of the Association shall be entitled to an examination of any proceedings of the

committee affecting him." All meetings of the committee on grievances and of the association shall be private, and the cost of all proceedings before this committee shall be paid by the treasurer of the corporation on the order of the chairman of the committee. By-law No. 3. The committee shall institute and carry on such proceedings against offenders, whether or not members of the association, and to such extent as the council or the association may order, and shall employ suitable counsel or agents for that purpose, the cost of such proceedings to be paid as in the case of the cost of hearings before the committee on grievances. Const. art. 4, § 7, Part III.

One of the purposes of the incorporation is "to insure conformity to a high standard of professional duty," and one of the methods adopted to this end is a systematic course of procedure for the detection and disbarment of unworthy attorneys, whether members of the association or not. Without stopping to dwell upon the features of this system, it is sufficient to say that in devising and pursuing it the association is engaged in a praiseworthy work, and that the system seems well calculated as well to protect the reputation of the person against whom an unjust complaint is made as to detect and expose the person justly accused.

The association has a large library and commodious rooms. Among its active members are many of the prominent members of the bar in this vicinity. There are no shares of stock and no pecuniary profits. The relation of honorary members is thus set forth in art. 3 of the constitution: "Any member of the Association who may become a judge or justice of any court of record, and all other members of the Supreme Judicial and Superior Courts, shall be, while they shall hold such office, honorary members of the Association, and shall be entitled to all its privileges, except that of voting, and shall be exempt from payment of dues." Such is the association and such is its method of procedure on charges of unprofessional conduct. Such also is the relation which the honorary members sustain to it.

The petition in this case was filed in the name of this association. The heading is as follows: "Bar Association of the City of Boston *v.* Peter J. Casey. Petition for Disbarment." It alleges that the respondent was duly admitted to the bar, that he has

been guilty of gross misconduct, giving a detailed account of the same, and ends with the prayer "that the said Casey be removed from the office of attorney at law in this Commonwealth, or that the court may make such further order in the premises as it shall deem expedient in the interests of the public welfare;" and it is signed "Bar Association of the City of Boston, by" its attorneys. It was the petition of the association, and there is no dispute that it was drawn up and filed under its authority.

Under these circumstances the respondent contends that every honorary member of this association was disqualified to act in this case. In support of that contention he says that this is a case in which the parties are two, the association on one side and he on the other; that every member of the association, whether regular or honorary, is therefore interested in the result, and is in substance a plaintiff, and that no man can be both judge and party in the same case.

It may be at once conceded that if the respondent's premises are correct his conclusion would be the natural logical sequence. But the premises are not correct. They are based upon an entire misconception of the nature of the proceeding. This is not a proceeding between two parties where the court is asked to adjudicate conflicting claims as to some right, corporeal or incorporeal, and where a decision favorable to one party is necessarily to that extent unfavorable to the other. It is rather in the nature of an inquest or inquiry as to the conduct of the respondent. In the result of this inquiry the association has no interest. It can gain nothing nor can it lose anything whatever may be the result. It simply calls the attention of the court to the alleged misconduct of an attorney, not for the purpose of obtaining redress of any grievance suffered by itself, but only that the court, if so disposed, may inquire into the charge and act accordingly. Such this petition plainly is upon its face. It sets forth no wrong done to it; it asks for no relief. The prayer at the end of the petition does not ask for such a decree as justice and equity may require as between the association and respondent, but in substance for such an order as the court shall "deem expedient in the interests of the public welfare."

And such is the proceeding in reality. An attorney at law is not merely a member of a profession practising for personal gain,

nor is he on the other hand a public officer. He is an officer of the court. *Ex parte Garland,* 4 Wall. 333. *Petition of Splane,* 123 Penn. St. 527, 540. The court, by reason of the necessary and inherent power vested in it to control the conduct of its own affairs and to maintain its own dignity, has a summary jurisdiction to deal with the alleged misconduct of an attorney. A proceeding for disbarment is simply the exercise of jurisdiction over an officer, an inquiry into his conduct not for the purpose of granting redress to a client or other person for wrong done, but only for the maintenance of the purity and dignity of the court by removing an unfit officer. As stated by Andrews, C. J., in *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 15, "[The proceedings are] an investigation by the court into the conduct of one of its own officers, not the trial of an action or suit." In that case the petition or complaint was filed by a committee of the Fairfield County bar, and the following language was used by Andrews, C. J.: "Neither the whole bar of Fairfield County nor its committee were parties to an action in any proper sense. They were not prosecuting any matter of their own. They were not plaintiffs. They were performing their sworn duty to the court by bringing to its knowledge the misdoing of one of its agents." This is an accurate statement of the relation sustained to this case by the petitioner. It has no control over the proceedings, nor any rights as to them, not even to an order of notice. The question whether any action shall be taken on the petition and, if so, what, is entirely within the discretion of the court. From the moment of the filing of the petition, the petitioner in law dropped completely out of the case, and the matter was entirely in the hands of the court to make the inquest on its own account and to such extent as it saw fit. And Mr. Hill in his subsequent acts, either in the preparation of the evidence, putting it in at the hearing, or addressing the court, was in law not acting for and in behalf of the association, but as an officer of the court, by the authority expressly or impliedly conferred by it upon him. And that is so although the formal order authorizing Mr. Hill "to prosecute the inquiry and proceedings in relation to said petition; such authorization to take effect from the date of the filing of the petition," was not entered upon the record until February 25, 1907. The expenses of the hearing were payable out

of the county treasury, R. L. c. 165, § 44, *Burrage* v. *County of Bristol,* 210 Mass. 299; and they were so paid.

"Usually [proceedings for disbarment] are commenced by rule to show cause, or by an attachment or summons to answer; but these are issued on motion or bare suggestion to the court, or even on the knowledge which the court may acquire of the doings of an attorney by their own observation. No formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding. Sometimes they are founded on affidavit of the facts, to which the attorney is summoned to answer; in other cases, by an order to show cause why he should not be stricken from the roll; and when the court judicially know of the misconduct of an attorney, they will of their own motion order an inquiry to be made by a master without issuing any process whatever, and on the coming in of his report will cause his name to be stricken from the roll." Bigelow, C. J., in *Randall, petitioner,* 11 Allen, 473, 479, citing Bac. Abr. Attachment, A, Attorney, H. and cases therein cited. *The King* v. *Southerton,* 6 East, 126, 143. *In the matter of Elsam,* 3 B. & C. 597; *S. C.* 5 D. & R. 389. See also *Ex parte Wall,* 107 U. S. 265; *Ex parte Steinman & Hensel,* 95 Penn. St. 220; *Randall* v. *Brigham,* 7 Wall. 523.

The nature of the present proceeding is not affected by the fact that through all its stages it has been entitled "*Bar Association of the City of Boston* v. *Casey.*" This is a mere matter of designation common in such a case in this Commonwealth. See *Cowley* v. *O'Connell,* 174 Mass. 253; *Boston Bar Association* v. *Greenhood,* 168 Mass. 169; *Boston Bar Association* v. *Hale,* 197 Mass. 423; *Boston Bar Association* v. *Scott,* 209 Mass. 200. In other jurisdictions a case for disbarment may be entitled either *Ex parte* or *In re* or *In the matter of* — followed by the name of the accused. And such a title seems preferable as indicating more accurately the real nature of the proceeding.

We entertain no doubt that the several justices of the Superior Court, whose right to sit has been challenged by the respondent, of their own motion upon information giving them reasonable cause to believe that the respondent had been guilty of professional misconduct, could have conducted an inquiry into the matter either through a master or in open court, and that it is

immaterial upon the question of their qualification that the information came by the petition or from whatever way it reached them.

*Exceptions overruled; orders affirmed.*

*J. S. Richardson & P. J. Casey*, for the respondent.

*A. D. Hill*, (*A. G. Grant* with him,) for the petitioner.