IN THE MATTER OF W. EDWIN ULMER.

Suffolk.    January 11, 1929. — September 10, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Attorney at Law*, Admission to practice, Disbarment. *Practice, Civil*,
    Disbarment proceedings: venue, petition, motion to dismiss, service
    of notice, waiver of defence, specifications, laches. *Venue. Waiver.*
    *Evidence*, Competency, Judicial notice, In disbarment proceedings,
    Court record. *Laches. Res Judicata. Law of the Case. Notice.*
    *Constitutional Law.*

A motion to dismiss a petition under G. L. c. 221, § 40, as amended by
    St. 1924, c. 134, for the disbarment of an attorney at law, relates only
    to matters apparent upon the record, raises only pure questions of
    law, and is not appropriate to the presentation of questions of fact.
In a petition filed in the Superior Court under G. L. c. 221, § 40, as
    amended by St. 1924, c. 134, for the disbarment of an attorney at
    law, it was alleged that the attorney, after a full hearing in disbar-
    ment proceedings in the District Court of the United States for the
    District of Massachusetts, had been found by said court to have
    committed wrongful acts complained of and was disbarred from
    practice in said court, and a copy of the findings of the judge of that
    court "on which said decree was entered" was annexed to the petition.
    Such copy was over eleven pages in length.  The court ordered that
    the respondent be served "with a true and attested copy of said
    petition."  The return of the officer showed that the copy of
    the petition he served stated that "a copy of the findings of . . .
    [the judge of the said district court], on which said decree was entered,
    is hereto annexed (on file) marked A."  The respondent moved to
    dismiss the proceeding on the ground that service upon him did not
    comply with the order of the court.  This court, assuming in favor
    of the respondent that the conformity of the return of the officer to
    the order of the court was open on a motion to dismiss, *held*, that
        (1) The omission of the annexed copy from the papers served on
    the respondent was not a fatal defect to be taken advantage of on
    motion to dismiss;
        (2) The respondent was entitled only to reasonable notice of the
    proceeding;
        (3) In the circumstances, including the obvious familiarity of the
    respondent with the findings in the said district court, the petition
    itself gave the respondent the reasonable notice of the nature of the
    proceedings to which he was entitled.
In a proceeding under G. L. c. 221, § 40, as amended by St. 1924, c. 134,
    for disbarment of an attorney at law, technical process and service
    are not required; form is not essential if in every matter of substance

the respondent receives notice and reasonable opportunity to prepare and present his case.

An objection to the prosecution in the county of Suffolk of a petition in the Superior Court under G. L. c. 221, § 40, as amended by St. 1924, c. 134, for the disbarment of an attorney at law on the ground that the respondent is a resident of Brookline in the county of Norfolk, raises a question of venue and not of jurisdiction of the court.

The strict terms of the statute as to venue are not applicable to a proceeding under G. L. c. 221, § 40, as amended by St. 1924, c. 134, for disbarment of an attorney at law.

Judicial notice is taken of local geography.

An attorney at law who resided in Brookline in the county of Norfolk and had practised in the county of Suffolk suffered no hardship by the mere fact that a petition under G. L. c. 221, § 40, as amended by St. 1924, c. 34, for his disbarment was brought in the county of Suffolk and not in the county of Norfolk.

In the proceedings above described, the respondent filed a plea in abatement setting up in substance that the disbarment proceedings in the United States District Court for the District of Massachusetts were void because the respondent never had been a member of the bar of that court. At a hearing of the plea, evidence was received and it was found that, while the respondent never had been admitted to practice in that court by reason of a motion made in this district, he had been admitted in 1888 to practice in the United States Circuit Court for the District of Maine; and, previous to his disbarment, he had appeared in many cases in the District Court for the District of Massachusetts as attorney and counsellor. At the hearing of the petition for disbarment in the Federal court, the respondent had appeared generally and had not objected that he was not a member of the bar of that court. The plea was overruled. *Held*, that

(1) The necessary implication of the decision of the Federal court disbarring the respondent was that that court considered him a member of its bar even though the point was not expressly raised;

(2) Since the Federal court had jurisdiction of the subject matter and of the respondent, the respondent, by his general appearance and conduct of the hearing in that court without raising the objection that he was not a member of its bar, had waived that defence;

(3) Within the rules, in force in 1888, of the United States Circuit Court for the District of Massachusetts and of the District Court of the United States for that district, and the pertinent statute, the respondent was a member of the bar of the District Court of the United States for the District of Massachusetts by reason of his having become a member of the bar of the United States Circuit Court for the District of Maine in 1888;

(4) The plea properly was overruled.

Upon the hearing of the above described case on its merits by a judge of the Superior Court, other than the judge who had heard the plea in abatement, it was proper to exclude evidence, offered under a part of the answer called "plea in bar," setting up the same question as that raised by and heard under the plea in abatement.

In the petition above described, it was averred that, in a proceeding brought in the Federal court "for the purpose of disbarring" the respondent for professional misconduct amounting to moral wrong, he was, after notice and full hearing, found by said court to have committed wrongful acts complained of and was disbarred from practice in said court; a full copy of the findings of the judge of the Federal court, containing a detailed description of eight alleged grounds of complaint, findings as to each and circumstances sustaining the complaints on six of the grounds, was averred; and it was requested that the court take such action as it might see fit. On demurrer, it was *held*, that

(1) The petition set forth sufficient grounds for disbarment under G. L. c. 221, § 40, as amended by St. 1924, c. 134;

(2) The specifications set forth in the copy annexed to the petition were ample; if the respondent had thought further specifications necessary, he might have asked for them;

(3) The reference in the petition to the disbarment by the Federal court and to the proceedings leading thereto was in itself sufficient pleading as ·ground for disbarment; there was no uncertainty or indefiniteness in thus stating the charge in the present petition;

(4) The petition did not proceed solely on the certificate of disbarment in the Federal court; inquiry was opened as to the foundation upon which that disbarment rested and the circumstances attendant upon it; and the respondent by it was given due notice of the charges and ample opportunity to defend against them;

(5) No rights of the respondent under the constitution of the Commonwealth or under that of the United States were violated by requiring him to answer the petition and be tried thereon.

From findings by the judge who heard the above described petition in the Superior Court, it appeared that he received in evidence the allegations in the disbarment proceedings in the Federal court, all the testimony and the arguments of counsel there taken, in stenographic form, the exhibits, and a copy of the findings of the judge and of his order for removal, but excluded testimony bearing on the merits of the issues presented in the proceedings in the Federal court; and that, in determining the effect to be given to the judgment of disbarment in that court, he adopted the rule prescribed in *Selling* v. *Radford,* 243 U. S. 46, and, applying it, found no infirmity disclosed in the proof in the Federal court, which established a want of private and professional character and guilt of a wilful and deliberate attempt to deceive the court, and no reason which convinced the judge that to allow the natural consequences of judgment of the Federal court to have their effect would contravene any principle of right and justice. A motion to dismiss the petition at the close of the evidence was denied. *Held,* that

(1) The decision in *Selling* v. *Radford* states the law of this Commonwealth;

(2) The decree of disbarment by the Federal court coupled with the findings by the Federal judge made out at least a *prima facie* case, and the motion to dismiss properly was denied;

(3) The documentary evidence as to proceedings in the Federal court, introduced in evidence before the trial judge, was not hearsay;

(4) It was proper to exclude the evidence offered to control the findings of fact in the Federal court;

(5) A proceeding for disbarment being civil and not criminal in its nature, the rules of evidence applicable to civil trials rightly were enforced;

(6) Every opportunity was accorded to the respondent to show all grave reasons likely to affect the conscience of the trial judge against giving to the judgment of disbarment by the Federal court its natural consequences;

(7) In view of his findings of regularity of the proceedings in the Federal court, it was no part of the duty of the trial judge to review what took place there;

(8) It appearing that the judge of the Federal court found in effect that at a hearing on a motion for attachment for contempt the respondent gave testimony which was misleading for the deliberate purpose of leading the court astray, and "a wilful and deliberate attempt to deceive the court" with reference to a certain circular letter sent out by him, and that, if "his testimony given at the hearing in the contempt proceeding did not amount to wilful perjury, it was an attempt to deceive the court," warranted an order of disbarment;

(9) The fact that the attempt to deceive the court was unsuccessful was immaterial;

(10) The fact that, in the findings by the judge of the Federal court, it appeared that the respondent had been found guilty of contempt of that court, was irrelevant.

It was no defence to the petition above described that it was not presented to the Superior Court for three years after the disbarment of the respondent in the Federal court.

PETITION, filed in the Superior Court on November 5, 1925, under the provisions of G. L. c. 221, § 40, as amended by St. 1924, c. 134, by Bar Association of the City of Boston, respecting an alleged member of the bar of the Commonwealth, and described in the opinion. The copy of the findings by *Morris*, J., of the District Court of the United States for the District of Massachusetts, which was annexed to the petition, reads as follows:

"MORRIS, J. This is a proceeding to disbar the respondent, W. EDWIN ULMER, from practicing as an attorney in the Federal Court for the District of Massachusetts. The petition is brought by Robert O. Harris, United States District Attorney for said District. Paragraphs one and two of the petition deal with preliminary matters. The grounds

of complaint, eight in number, are, for convenience of reference, numbered to correspond with the numbers in the petition, beginning with number three and are as follows:

"(3) That on or about October 21, 1916, the respondent was suspended from practice as an attorney and counsellor of this court for making false and scandalous statements relative to one of the referees in bankruptcy.

"(4) That on March 30, 1921, the respondent filed in this court a paper entitled 'Motion to Discharge Receiver,' which motion contained scandalous and impertinent statements concerning persons who were not parties to the cause in issue, which statements were ordered by the court to be struck from the records.

"(5) That the said respondent willfully and maliciously attempted to interfere with and obstruct the sale by a receiver appointed by this court of the property of the WABAN ROSE CONSERVATORIES, by making false statements relative to the condition and affairs of said Waban Rose Conservatories and was afterward found guilty of contempt because of such conduct.

"(6) For giving false testimony on May 5, 1921, before the court, relative to a petition for attachment for contempt against the said respondent then pending and on hearing before said court.

"(7) That the respondent filed an affidavit of prejudice against one of the judges of this court, which affidavit contained false, scandalous and impertinent matter, and, upon hearing, was struck from the records of the court.

"(8) That on December 9, 1921, the respondent filed in this court a petition for a rehearing in the matter of the sale of the property of the WABAN ROSE CONSERVATORIES, which petition contained false, scandalous and impertinent matter and upon hearing was struck from the records of the court.

"(9) That in a proceeding pending before a referee in bankruptcy on October 21, 1921, the respondent attempted to appear and act simultaneously as attorney for the bankrupt corporation and for sundry creditors thereof, in violation of the rules of this court; and upon being informed that he could not so appear, attempted to circumvent the

said rules by causing a third person to appear for said creditors, representing that such person was disinterested, when, in fact, he was treasurer of said corporation and in the employ of the respondent.

"(10) That the respondent, for five years last past, when acting as attorney and counsellor in this court, has willfully and deliberately attempted to impede and subvert the administration of justice by making, uttering and causing to be spread upon the court records false, malicious and scandalous statements concerning officers of the court, parties litigant, and others.

"The answer of the respondent is a practical denial of all the allegations of the petition excepting the first ground of complaint above set forth. With respect to such of the allegations as are founded on records in this court, the respondent says that in all respects he acted in good faith in filing the same and that the facts set forth in the several petitions referred to are true. As a further defense the respondent says that certain individuals connected with the Waban Rose Conservatories and Henry Wood Sons Company, two insolvent corporations in which the respondent is financially interested, have combined together and carried on a "system of unfounded persecution . . . against the respondent and his wife and sister which has culminated in the filing of this petition."

### ALLEGATION No. 3

"The complaint alleges and the respondent's answer admits, that on October 21, 1916, the respondent was suspended from practice as an attorney and counsellor of this court for the term of one year. The District Attorney offered in evidence the court records to show the grounds for the previous disbarment. Upon the objection of the respondent, the records were ruled out, it being considered by the court that the respondent, having been found guilty and paid the penalty; and having been reinstated as counsellor and attorney of this court, the facts set forth ought not to be considered as a cause for his present disbarment. They have not been so considered.

## ALLEGATION No. 4

"In order to get a correct understanding of the remaining allegations, a short explanation of the litigation preceding the acts alleged to have been committed by the respondent is necessary.

"All of his troubles have grown out of litigation relating to the winding up of two corporations, namely, THE WABAN ROSE CONSERVATORIES and the HENRY WOOD SONS COMPANY. It appears that the respondent for three years prior to the filing of the pending petition was manager, director, and clerk of both of the above named corporations. The stock was owned by the heirs of Edmund M. Wood. There had been much litigation among the Wood heirs, and finally between the Wood heirs and the respondent. Early in 1921, involuntary proceedings were begun in the courts for the winding up of both corporations. A petition in bankruptcy was filed against the Henry Wood Sons Company and a receiver appointed for the Waban Rose Conservatories.

"At the time these petitions were filed the Wood heirs owed the respondents $20,000 for legal services and the stock of the two corporations was pledged to him as security therefor. He also had contracts with both, providing for his employment as manager at a salary of $350 per month from each corporation. The receivership proceedings in the matter of the Waban Rose Conservatories was commenced February 19, 1921. The proceedings in bankruptcy against the Henry Wood Sons Company were commenced somewhat earlier. Prior to the filing of the petitions in the above mentioned proceedings, the feeling between the Wood heirs and their counsel on one side and the respondent on the other side, had become very bitter. The first contest over the property after the bankruptcy proceedings had been instituted against the Henry Wood Sons Company, arose at the election of a trustee. The respondent failed to secure the appointment of his candidate and a bitter feeling has existed between the appointee and the respondent ever since.

"On March 30, 1921, the respondent filed in the district

court a paper entitled, 'Motion to Discharge Receiver.' In it, he took occasion to go outside the question under immediate consideration and rehearsed at length the litigation, past and present, that had taken place among the Wood heirs and between himself and the Wood heirs. He permitted his animosity to get the better of his judgment and took occasion to refer to the Wood heirs and their counsel in terms certainly scandalous and impertinent. From the view point of good pleading, there was no occasion for reciting the history of either corporation or making any reference to the Wood heirs or their counsel. When the motion came on for hearing before the Court, the presiding justice called his attention to the scurrilous language, and it was deleted from the record.

"I find that the allegations set forth in paragraph 4 are sustained; but if this was the respondent's only offense, I would not think it sufficient to warrant an order of disbarment.

### ALLEGATION No. 5

"Allegation Number 5 sets forth that the respondent willfully and maliciously attempted to interfere with and obstruct the Receiver's sale of the estate of the Waban Rose Conservatories by making false statements relative to the condition and the affairs of said estate, and that he was found guilty of contempt because of such conduct. It appears from allegations in the petition that, at a hearing before one of the judges of this court, an order of sale at public auction of all the real estate and personal property of the Waban Rose Conservatories was entered March 30, 1921, and that, in accordance with such order, a sale of said property was advertised to take place on May 9, 1921.

"It is further alleged that the respondent willfully and maliciously attempted to interfere with said sale by making false representations and false statements to divers creditors and other persons likely to become bidders at said sale; that in particular, the respondent sent a circular letter dated April 25, 1921, to said creditors in which false statements were made as to the condition of the property

and the administration of it by the Receiver; and that to this circular letter was attached a paper headed, 'Objections of C. P. Anderson Third Mortgagee to Issuance of Receiver's Certificates,' and another paper herein already referred to as the 'Motion to Discharge Receiver.' In this circular letter, the respondent represented that, after two and one-half months of management by the Receiver, a deficit had occurred during the first month of $7,500 which statement the pending petition alleges to be false. It is further alleged that it was stated in the letter that 'The founder of the Conservatories should rise from his grave to oppose this act of vandalism.'

"I find that on April 26, 1921, such a letter was sent to the creditors and about the same time a copy of the motion to discharge the Receiver and the objection of C. P. Anderson to the issuing of Receiver's certificates was sent.

"In the letter the respondent failed to notify the creditors that there had been a hearing before the court on his motion to discharge the Receiver and that the motion had been denied.

"Immediately following the sending out of the circular letter above mentioned the Receiver of the Waban Rose Conservatories, on April 28, 1921, filed in this court a motion against the respondent for an attachment for contempt, which motion set forth in substance the above mentioned facts. The motion for attachment was heard and the respondent, Ulmer, was found guilty of contempt and fined the sum of $300 which he paid.

"At the hearing on this petition for disbarment, the respondent offered to introduce evidence tending to show that the facts set forth in his circular letter and in his petition to discharge the Receiver, were true. The District Attorney objected to going into a hearing on the facts alleged in either, or in the petition for attachment for contempt. He stated that he relied entirely upon the order adjudging the respondent in contempt. It appeared to the court that the crux of the allegation was' the fact that the respondent had been adjudged in contempt for willfully and maliciously interfering with the Receiver's sale of the

bankrupt's property and that it was not incumbent on the court to re-try the issue of contempt, or to determine whether the facts set forth in the respondent's letter and motion to discharge the Receiver were true or false.

"The evidence offered by the respondent was ruled out subject to his exceptions.

"I therefore make no finding as to whether any of the allegations set forth in said documents or in the petition for attachment for contempt, are true or false, except as hereinafter mentioned, and what may be inferred from the result of the hearing and the order thereon. The petition for attachment contained several allegations of fact, any one of which might, if found to be true, furnish the foundation for the order made by the court. Upon which allegation the action of the court was based, I do not pretend to say.

"I do find under allegation No. 5 of this petition that the respondent was adjudged in contempt of court for willfully and maliciously interfering with a judicial sale of the Waban Rose Conservatories and that he was fined $300, which fine he paid.

### ALLEGATION No. 6

"It is alleged that the respondent gave false testimony on May 5, 1921, at a hearing on the motion for attachment for contempt already referred to. The allegations of the petition set forth that at said hearing the respondent testified falsely, in that he testified that the copies of his 'Motion to Discharge Receiver,' that he sent to the creditors, were multigraphed at the same time that the motion was drawn for filing in the court, and before it had been heard and denied; whereas, in fact and in truth, they were multigraphed afterwards and sent to the creditors for the express purpose of influencing bidders at the sale.

"A transcript of the evidence taken at the hearing in the attachment proceeding May 5, 1921, was introduced in evidence before me. It contains a record of the testimony given by the respondent under direct examination by his own counsel, relative to the multigraphed copies of the petition to discharge the Receiver which he sent to cred-

itors. At that hearing, the respondent testified that the petition for the removal of the Receiver was multigraphed at the same time that the petition was drawn for filing in court and that the multigraphed copies were not intended to be sent to the creditors but were to be used whenever a creditors' meeting was called.

"He also testified that by inadvertence the copies were sent out by the stenographer in connection with the circular letter without any statement to the effect that the petition had been acted on by the court and denied. This was the respondent's excuse for sending out the copies without notifying the creditors of the action of the court.

"It will be remembered that the original petition to discharge the receiver contained scandalous statements which upon examination were ordered deleted from the record. If the multigraphed copies had been made at the time the original petition was drawn, they would have contained the words struck out. An examination of the multigraphed copies shows that they do not contain the words struck out. The only conclusion that can be reached is that the multigraphing was done subsequent to the hearing upon the petition and after the objectionable matter had been deleted, thus showing a deliberate purpose on the part of the respondent to withhold from the creditors to whom a copy of the petition was sent, the fact that the petition had been heard and denied.

"In his testimony before me, the respondent tried to explain this matter, still attributing it to an error of the stenographer in making the copy from which the multigraphed copies were made, but his explanation is labored and unsatisfactory.

"Upon the allegation I find that, at the hearing upon the petition for contempt, the respondent gave testimony before a judge of this court which was misleading, for the deliberate purpose of deceiving the court.

### ALLEGATION No. 7

"Allegation No. 7 of the petition for disbarment sets forth that the respondent filed an affidavit of prejudice

against one of the judges of this court for the purpose of delay and not in good faith, and that said affidavit contained allegations, which, upon the face of the record in the case then pending, were false and which the said Ulmer knew were false at the time of filing the same. It is also alleged that the affidavit contained scandalous and impertinent matter. It appears that this affidavit of prejudice came on for hearing before Judge Bingham who found 'that it was filed with a view of delay in the trial of the cause.' He also found that the affidavit contains some assertions of fact which the record in the case disclosed to be untrue, and that the affidavit contained irrelevant matter, some of which was scandalous in character.

"Upon the hearing before me the respondent offered testimony to substantiate the allegations in his affidavit of prejudice, claiming that when the matter was heard before Judge Bingham no evidence was introduced and that he was not permitted to prove the facts set forth in his affidavit. The District Attorney stated that he relied on the fact, that, upon hearing, the affidavit was ordered struck from the record. As above stated, I did not think it my duty to re-try an issue which had already been tried by a judge of this court. Upon the objection of the District Attorney the respondent's evidence was ruled out and nothing but record evidence received relative to this allegation in the petition for disbarment.

"Upon this allegation, I find that the respondent on October 13, 1921, filed an affidavit of prejudice against one of the judges of this court which was heard before Judge Bingham on October 28, 1921; that findings of fact were made as above stated, and that said affidavit of prejudice was ordered struck from the record because the affidavit was not in compliance with the statute.

### ALLEGATION No. 8

"Allegation No. 8 sets forth that on December 9, 1921, the respondent filed in this court a petition entitled 'Petition for Rehearing Sale Conservatories,' containing false,

scandalous and impertinent matter and that upon hearing said petition was ordered struck from the record. Like the allegations numbered four, five and seven, proof of this allegation stands upon the record. The respondent offered evidence to prove the allegations contained therein which was ruled out on motion of the District Attorney subject to respondent's exception.

"From the record, I find that on December 9, 1921, the respondent filed in this court a certain paper entitled 'Petition for Rehearing Sale Conservatories.' In his petition, he set forth at length the prior proceedings relating to the sale of the Waban Rose Conservatories property, including much immaterial and irrelevant matter. He charges the Receiver with conspiring with counsel for the first and second mortgagees to obtain control of the property in the interest of the mortgages and against the interests of the unsecured creditors. He charges that they pursued the respondent for contempt of court for the purpose of disconcerting and avoiding his testimony and establishing the claim of the second mortgagee, and that while doing so, they rushed the hearing through the court establishing said claim without giving the respondent a fair chance of protecting his rights. On December 15, 1921, the Receiver filed a motion to expunge the above mentioned petition from the records. A hearing on the motion was had December 19, 1921, before Anderson, J. who found that the petition was not filed in the form and manner required by law and by the rules of this court; that said petition was scandalous and impertinent and that, upon the records in the case, many of the allegations therein contained were false and were known to be false at the time of filing the same by said Ulmer.

"The respondent offered evidence tending to establish the truth of the allegations in his petition.

"I again ruled, subject to respondent's exception, that evidence outside of the record was not admissible, the government having previously stated that it stood on the record, and that I would not re-try matters which

had been heard and determined by another judge of this court.

"I find that on December 9, 1921, the respondent filed in this court a paper entitled, 'Petition for Re-hearing Sale Conservatories'; that said petition came on for hearing before Judge Anderson who ordered it expunged from the records for the reasons above set forth. I make no finding based on the allegations set forth in the expunged petition except such as is contained in my findings under paragraph ten.

### ALLEGATION No. 9

"It is alleged in Paragraph No. 9, that on October 21, 1921, the respondent appeared before the referee in bankruptcy in a bankruptcy proceeding for the purpose of electing a trustee, in a matter entitled, 'In re-Henry Wood Sons Company,' claiming to represent the bankrupt corporation and certain creditors of the corporation, contrary to the rules of the bankruptcy court in this District; and that, upon it being called to his attention that he could not represent both the corporation and its creditors when voting for a trustee, he called upon one John G. McHardy to vote for trustee in his stead, representing said McHardy to be a disinterested person, when in fact he was treasurer of the corporation and an employee acting under the authority of the respondent. The respondent denied that there was any intention on his part to violate the rules of court or to deceive the referee in bankruptcy.

"Upon a consideration of all of the evidence bearing upon this allegation, I do not find that it is sustained. The respondent offered powers of attorney from eight creditors directed to him and authorizing him to vote for Edwin P. Jenney as trustee. When his attention was called to the rule, he called upon John G. McHardy treasurer of the corporation, not a lawyer, and turned his powers of attorney over to him, representing to the referee that McHardy was a disinterested person who would vote in his stead for trustee. It appears that McHardy thereupon offered a number of votes made out in his own name and those made

out in the respondent's name, all of which were tentatively received by the referee. It is claimed that the respondent in stating that McHardy was a disinterested person entitled to vote the powers of attorney, tried to deceive the referee. I cannot find that this was a wilful attempt at deception in view of the fact that McHardy had signed papers, which were then before the referee, as treasurer of the Henry Wood Sons Company, and in view of the fact that at least three of the powers of attorney which he offered were made out to 'John G. McHardy, Treas.' The acts of the respondent are attributable to ignorance of the rule and thoughtlessness rather than to any deliberate purpose to deceive.

### ALLEGATION No. 10

"The allegations of Number 10 are that the respondent for a long time past, to wit, for at least five years, has wilfully and deliberately attempted to impede and subvert the administration of justice by making, uttering and causing to be spread upon the court records false, malicious and scandalous statements concerning officers of the court, parties litigant, and others. It was stipulated by the District Attorney that the evidence with respect to this allegation would be confined to the acts set forth in the preceding allegations, and that there would be no evidence tending to prove misconduct other than that connected with the proceedings in the Henry Wood Sons Company, the Waban Rose Conservatories and the disbarment proceeding mentioned in paragraph three. All that is needed to prove the allegations in this paragraph is a perusal of the record evidence marked as exhibits in this case. The record shows either an entire lack of knowledge on the part of the respondent of the rules of pleadings, or a complete disregard of them.

"I find that the respondent has traveled far afield from the matters in issue and, in disregard of the rules and forms of pleadings, has set forth much impertinent and irrelevant matter and, that, in his pleadings, he has exhibited unnecessary animus toward opposing counsel and malice toward

persons who were not parties to the record. The allegations of paragraph 10 are sustained.

## CONCLUSIONS

"I find that the allegations numbered 4, 5, 6, 7, 8 and 10 are sustained. Paragraphs 4, 5, 7 and 8 rest on the record findings of other members of this court. My report upon the last mentioned paragraphs is confined to a statement of what has been previously determined in other proceedings in which the respondent acted either as counsel, or as a party litigant, or both.

"My findings under allegations 4 and 8 are independent of those in any other proceeding. In ruling on points of evidence, I have considered that the truth of scandalous and impertinent matter, maliciously and wilfully set forth in pleadings, is not a subject of proof. It is, whether true or not, immaterial to the issue and improper. The only questions before me under the allegations of this paragraph are, does the record contain such scandalous and impertinent matter and, if so, was it willfully and maliciously inserted in the record. These questions have been determined in part from an inspection of the record exhibits and in part from the oral testimony adduced at the hearing before me.

"The exhibits introduced in evidence in this proceeding taken from the records in the case of Anderson Coal Company v. Waban Rose Conservatories, are replete with scandalous as well as impertinent matter having no bearing upon the issues intended to be raised by the pleading. It is apparent that the respondent has taken every opportunity to vent his spite on his opponents and their counsel by spreading upon the court records immaterial and scandalous matter. I cannot find that such conduct on the part of the respondent was unintentional or due to lack of knowledge or skill.

"It may in part result from the fact that in all but one of the hearings the respondent acted as his own counsel in matters of great financial interest to him and that he be-

came obsessed with the idea that he was being unwarrantably pursued and had become the victim of persecution. That he has been persistently pursued is apparent from the record, but he has brought much of his troubles upon himself by his conduct toward his opponents and their counsel. I do not find that their conduct toward him furnished any excuse for his persistent attempts to foul the court records with scandal and libel. Were the facts in the case confined to the respondent's misconduct in drafting motions and pleadings in the matters pertaining to the two corporations in which he was so vitally interested, it is possible that I might not think it sufficient grounds for permanently depriving the respondent of the right to practice his profession in this court. I might consider that his acts were the result of ignorance of the rules of pleading multiplied by a perverted sense that he was personally being too persistently pursued by his opponents, and deprive him of his office as an attorney of this court for a limited period of time, but I cannot overlook what appears to me a wilful and deliberate attempt to deceive the court with reference to the multigraphing, and sending out to creditors, of the circular letter and copies of the 'Petition to Discharge the Receiver.' If his testimony, given at the hearing in the contempt proceeding, did not amount to wilful perjury, it was an attempt to deceive the court. Such conduct is a gross violation of an attorney's oath, and has always been held to warrant conviction in a disbarment proceeding. . . . [here followed a number of citations].

"I can see no other alternative than to enter judgment in this action disbarring the respondent from any longer practicing as an attorney or counsellor in this court, and it is so ordered."

Charles W. Mulcahy, Esquire, was designated by the court to conduct the proceedings.

The respondent filed a motion to dismiss the petition, a plea in abatement and a demurrer, described in the opinion, all of which were heard by *Weed*, J., by whose order

the motion was dismissed, and the plea and the demurrer were overruled.

The respondent then filed an answer and the matter was heard on the merits by *McLaughlin*, J. Material facts found and rulings made by him are stated in the opinion. He ordered that the respondent be removed from practice in the courts of this Commonwealth.

The respondent alleged exceptions.

*W. B. Grant & E. R. Anderson*, for the respondent.

*C. W. Mulcahy*, appointed by the court to conduct the proceedings.

RUGG, C.J. This is a proceeding designed to bring to the attention of the court for disciplinary action professional misconduct of an attorney at law. It was instituted by the Bar Association of the City of Boston, a Massachusetts corporation. Its initial step in court for convenience may be termed a petition. In truth the paper filed by it simply directed the attention of the court to the facts that W. Edwin Ulmer was admitted to the bar of this Commonwealth in 1897 under the name of William E. Ulmer and thereafter practised in Boston; that "in a proceeding brought in the District Court of the United States for the District of Massachusetts by the United States Attorney for said District for the purpose of disbarring the respondent for professional misconduct amounting to moral wrong he was, after notice and full hearing, found by said court to have committed wrongful acts complained of and disbarred from practice in said court by a decree filed on or about September 12, 1922. A copy of the findings of Morris, J., on which the said decree was entered is hereto annexed marked A." The prayer was that the court take such action as it may see fit.

I. The respondent filed a motion to dismiss. This form of pleading relates to matters apparent upon the record. It raises a pure question of law. It is not appropriate to the presentation of questions of fact. *Paraboschi* v. *Shaw*, 258 Mass. 531, 532, and cases there collected. *Amidown* v. *Peck*, 11 Met. 467, 468. The respondent set up in this motion and

now argues that the service on him did not comply with the order of the court that he be served "with a true and attested copy of said petition" in that the copy served on him stated that "a copy of the findings of Morris, J., on which said decree was entered, is hereto annexed (on file) marked A." We assume in favor of the respondent that the conformity of the return of the officer to the order of the court is open on a motion to dismiss. *Simonds* v. *Parker*, 1 Met. 508, 511. The order of notice contains no explicit direction that the copy of the findings be annexed to the notice to be served on the respondent. But in any event the omission of the annexed copy from the papers served on the respondent was not a fatal defect to be taken advantage of on motion to dismiss. It is obvious from the record as a whole that the respondent was in truth familiar with the specified findings, and that the original was a matter of easily accessible public record, and that the petition itself gave him reasonable notice of the nature of the proceeding. He was entitled to that but not to more. *Matter of Sleeper*, 251 Mass. 6, 18. In a proceeding of this nature, technical process and service are not required. Form is not essential if in every matter of substance the respondent has had notice and reasonable opportunity to prepare and present his case. *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 184. *Matter of Allin*, 224 Mass. 9, 11, and cases there collected.

The eighth and ninth grounds in the motion to dismiss relate to venue. It there is set up that the defendant is a resident of Brookline in the county of Norfolk and that, as the proceeding is brought in Boston in the county of Suffolk, it ought to abate. This relates to venue and not to jurisdiction. *Paige* v. *Sinclair*, 237 Mass. 482. It raises a question of fact not appearing on the record. Strictly speaking, its merits are not open on a motion to dismiss, which, as already pointed out, deals solely with questions of law and not of fact. Assuming for the moment that it is open to the respondent, there is no merit in the point. Judicial notice is taken of local geography. Brookline is a town chiefly residential in character, and, although a part of Norfolk

County, is not adjacent to any other part of that county and is almost entirely surrounded by Boston. It is hardly distinguishable in business aspects from other parts of Boston. Large numbers of its inhabitants engage in business in Boston. The conduct of the respondent on which these proceedings are founded took place in the courts of the United States held within the territorial confines of Suffolk County. It was said in *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 183, that an inquiry of this nature "is not a criminal proceeding. Its primary purpose is not punishment but the preservation of the purity of the courts and the protection of the public from attorneys who disregard their oath of office." It is not necessarily instituted, prosecuted, or forwarded by a writ. It is a proceeding at law. It is in the nature of an inquiry by the court into the conduct of one of its own officers. Proceedings may be brought in the most summary manner, provided constitutional rights are respected. It hardly could be contended that flagrant abuse of professional privileges or outrageous conduct committed in the presence of the court by an attorney resident in a distant county might not be tried summarily and without delay, instead of being justiciable only in the county of his domicil. *Randall, petitioner,* 11 Allen, 473, 479. *Boston Bar Association* v. *Casey,* 211 Mass. 187, 191. *Matter of Sleeper,* 251 Mass. 6, 12, 18, 19. *Ex parte Robinson,* 19 Wall. 505, 512, 513. *Ex parte Wall,* 107 U. S. 265. The proceedings in the case at bar conformed to the procedure pointed out in *Boston Bar Association* v. *Casey,* 211 Mass. 187, 191–193. The strict terms of the statute as to venue are not applicable. It is not conceivable that any undue hardship was inflicted upon the respondent by holding the trial in Suffolk instead of in Norfolk County. There is no indication of that nature in the record. He is alleged to have practised in Suffolk County.

Other matters set forth in the motion to dismiss have not been argued and are treated as waived. There was no error in overruling this motion.

II. The respondent filed a plea in abatement setting up in substance that the disbarment proceedings in the United States District Court for the District of Massachusetts were

void because the respondent never was a member of the bar of that court. There are several answers to the contention thus put forward.

A. The necessary implication of the decision of the Federal court disbarring the respondent is that that court considered him a member of its bar even though the point was not expressly raised. That decision imports a finding of every fact essential to the conclusion reached. A court cannot disbar an attorney at law unless he has first in some way become a member of its bar. The courts of each jurisdiction must decide for themselves who is and who is not a member of its bar. No other court can enter an effective judgment on that point. The courts of each jurisdiction are invested with the right and charged with the duty of determining who may practise before them as an attorney at law. No court of any other jurisdiction is clothed with the power of reviewing such determination. This is the underlying principle of *Selling* v. *Radford*, 243 U. S. 46. That case further holds that an attack upon the soundness of such determination is confined to what may be disclosed by the record. There are enumerated in that case certain conditions which may lead the court of another jurisdiction not to give full weight and the natural effect to such determination, but these are confined to matters appearing "from an intrinsic consideration of the State record . . . of the . . . court" making such determination. A careful examination of the record of the proceedings in the Federal court would be necessary to determine (1) that there was notice to the respondent and full hearing on the charges presented; (2) that there was no "such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject"; and (3) that no other grave reason exists why the natural consequences of that judgment should not be given their full effect. 243 U. S. at page 51. See *Thatcher* v. *United States*, 212 Fed. Rep. (C. C. A.) 801. The application of the principles of *Selling* v. *Radford* to the facts here disclosed will be considered later. The circumstance that

in that case the admission to the bar of the Supreme Court of the United States had been based on an admission to the bar of a State court does not differentiate the principles there declared from application to facts disclosed on the present record. The fundamental question in all such cases is whether in the respondent there is absence of the sound private and professional character essential for an attorney at law.

B. The respondent appeared generally in the proceedings in the Federal court for his disbarment and did not contest the fact that he was a member of its bar and hence subject to its disciplinary action. On the contrary he engaged in a full trial on the merits of the charges presented as grounds for his disbarment. Plainly that court had jurisdiction of the subject matter of disbarring and disciplining those admitted to practice before it as attorneys at law, and it acquired jurisdiction of the respondent. No question of jurisdiction is thereafter open. The respondent might have interposed as a defence that he was not a member of the bar of that court nor amenable to its disciplinary action; but he did not. That was not an attempt to waive jurisdiction. It was the waiver of a defence. Want of jurisdiction cannot be waived. Defences may be waived. The case on this point is covered in principle by *Lonergan* v. *American Railway Express Co.* 250 Mass. 30, 40, 41. See also *Bauer* v. *International Waste Co.* 201 Mass. 197, 200, 201, and *Reynolds* v. *Grow*, 265 Mass. 578, 580, 581.

C. The judge who heard the plea in abatement received evidence and made findings of fact. Thus it appears that the respondent in 1888 was admitted to practice as an attorney in the United States Circuit Court for the District of Maine, then, as now, a district of the first circuit as is also the district of Massachusetts. The rules of the Circuit Court for the District of Massachusetts then in force provided that "Attorneys and counsellors admitted by the Circuit Court in any district in this circuit shall be attorneys and counsellors within and for this district." The Circuit Court for the District of Massachusetts, under the provisions of the Act of Congress of March 3, 1911, The Judicial Code, 36 U. S. Sts.

at Large at page 1167, c. 231, § 289, abolishing the Circuit
Courts and enlarging the powers of the District Courts, ad-
journed *sine die* on December 31, 1911, and was succeeded
by the United States District Court for the District of
Massachusetts.   The latter court adopted the rules of the
Circuit Court for the District of Massachusetts, including
the rule quoted, and these rules continued in force until
February 15, 1916, when new rules were adopted.   Para-
graph one, of the first division of said new rules entitled "At-
torneys and Counsellors" is as follows:  "Attorneys and
counsellors heretofore admitted by the Circuit Court in this
district, or heretofore or hereafter admitted by this court
shall constitute the bar of this court."   Other of these rules
provide for admission on motion of attorneys admitted to
practice in other districts.   Further findings of fact were
these:  "There is no record of the respondent's admission
to the bar either of the old Circuit Court for the District of
Massachusetts or of the present District Court for the Dis-
trict of Massachusetts.   The record kept by the respective
clerks of said courts, however, was a record of attorneys ad-
mitted on motion, and no record was kept of the names of
attorneys admitted in other districts of the First Circuit to
whom the former rule of the Circuit Court for the District
of Massachusetts first above quoted might apply.   The
respondent, prior to the decree of the United States District
Court for the District of Massachusetts disbarring him, ap-
peared as an attorney and counsellor in many cases pending
in said Court.   The respondent has never resigned nor been
disbarred as an attorney and counsellor of the former Circuit
or present District Court for the District of Maine.   After
hearing, I overrule the respondent's plea in abatement, and,
so far as it may be material, I find and rule that the allega-
tions of fact therein contained are not true in fact."   Mani-
festly this was right.   The respondent became a member of
the bar of the Circuit Court for the District of Massachusetts
by virtue of the rule in force at the time of his admission to
that court for the district of Maine.   It seems to us that the
effect of rule one already quoted was to continue the respond-
ent as a member of the bar of the district court of Massa-

chusetts. The circumstance that his name was not enrolled on the records of that court as an attorney is of no consequence. He was recognized as such attorney and constantly practised as an attorney before that court. In any event that court had jurisdiction to deal with him as one of its attorneys.

D. It follows from what has been said that there was no error by the judge who heard the case on the merits in refusing to hear evidence on that part of the respondent's answer which was in the nature of a plea in bar touching the point whether he was a member of the bar of the Federal court, in excluding all offers of proof made in that connection and in overruling it. As matter of fact the issue had been tried on the plea in abatement and the findings were categorically against the contentions of the respondent. As matter of law the contentions presented are unsound. The reasons already have been stated. It is needless to examine the offers of proof in detail or the arguments presented in support of the contentions as to the law.

III. The respondent demurred to the petition on numerous grounds. It was alleged in the petition, as already stated, that the respondent was disbarred in the District Court of the United States "for professional misconduct amounting to moral wrong," copy of the findings of the judge of that court being annexed. That was a sufficient compliance with G. L. c. 221, § 40, as amended by St. 1924, c. 134, where it is provided that an attorney may be removed "for deceit, malpractice or other gross misconduct." The findings of the district court to which reference was made contain full and detailed statements of the charges made against him. The words of the statute are comprehensive. They are generic and not particular. They do not constitute narrow and technical specifications. Evidence supporting any want of moral probity or integrity, or showing misconduct of such nature that the respondent is unfit to be trusted by clients or by the court or to bear the responsibilities and perform the duties of an attorney at law is enough to warrant and to demand disciplinary action by the courts. It is required by G. L. c. 221, § 37, that applicants for admission to the bar shall be of good moral character. If and when an attorney

at law ceases to possess such character, that is sufficient cause for disbarment. That is demonstrated by all of our decisions hitherto cited. To the same effect are *O'Connell, petitioner*, 174 Mass. 253, 262, *Boston Bar Association* v. *Scott*, 209 Mass. 200, *Boston Bar Association* v. *Casey*, 196 Mass. 100; 213 Mass. 549, 558, and *Matter of Cohen*, 261 Mass. 484. Moreover, the power to suspend or disbar an attorney for cause shown is inherent in the court and not dependent upon the statute. *Matter of Carver*, 224 Mass. 169. *Boston Bar Association* v. *Casey*, 211 Mass. 187, 192. *Matter of Cohen, supra*, at page 486, and cases there collected.

Of course the respondent was entitled to notice of the grounds of complaint against him. *Matter of Sleeper*, 251 Mass. 6, 18–20, and cases there reviewed. *Ex parte Robinson*, 19 Wall. 505. He received such notice by the petition as to satisfy every requirement. The specifications set forth in the copy annexed to the petition were ample. They gave him full notice of the charge. If the respondent thought that he ought to have further specifications, he might have asked for them.

The reference in the petition to the disbarment by the Federal court and to the proceedings leading thereto was of itself sufficient pleading as ground for disbarment. There is no uncertainty or indefiniteness in thus stating the charge in the present petition. Proof of that pleading would be adequate ground for affirmative judicial action. In the light of such pleading and such proof the vital question would be presented to the trial court as to the appropriate action in the light of the situation presented. As was said by Mr. Chief Justice White respecting a similar matter in *Selling* v. *Radford*, 243 U. S. 46, at page 50, "In coming to solve that question three things are patent: (a) That we have no authority to re-examine or reverse as a reviewing court the action of the Supreme Court of Michigan in disbarring a member of the Bar of the courts of that State for personal and professional misconduct; (b) that the order of disbarment is not binding upon us as the thing adjudged in a technical sense; and (c) that, albeit this is the case, yet as we have previously shown, the necessary effect of the action of the Supreme Court of

Michigan as long as it stands unreversed, unless for some reason it is found that it ought not to be accepted or given effect to, has been to absolutely destroy the condition of fair private and professional character, without the possession of which there could be no possible right to continue to be a member of this Bar. Meeting this situation, we are of opinion that on the case presented our duty is not to review the action of the state court of last resort — a power which we do not possess — , not wholly to abdicate our own functions by treating its judgment as the thing adjudged excluding all inquiry on our part, and yet not, in considering the right of one to continue to be a member of the Bar of this court, to shut our eyes to the status, as it were, of unworthiness to be such a member which the judgment must be treated as having established, unless for some reason we deem that consequence should not now be accepted. In other words, in passing upon the question of the right to continue to be a member of the Bar of this court, we think we should recognize the absence of fair private and professional character inherently arising as the result of the action of the Supreme Court of Michigan so far as we are at liberty to do so consistently with the duty resting upon us to determine for ourselves the right to continue to be a member of this Bar."

The present petition does not proceed solely on the certificate of disbarment in the Federal court. Inquiry is opened as to the foundation upon which rests that disbarment and the circumstances attendant upon it. The respondent had due notice. Ample opportunity to be heard was afforded under the petition for investigation into matters relevant to the issue stated. It is too clear for further discussion that "the attempt to try" the respondent on the petition as filed was not in violation of any rights secured by the Fourteenth Amendment to the Constitution of the United States or by articles 1, 10, 12, 15, 29 of the Declaration of Rights of the Constitution of this Commonwealth, all of which are mentioned in the respondent's brief.

Every ground of demurrer argued has been considered. Those not argued are treated as waived. The demurrer was overruled rightly.

IV. After the disposal of these dilatory pleadings the case was heard on its merits. The respondent saved exceptions to the admission and exclusion of evidence and to rulings of law. So far as these have been already discussed as to their substance, no further reference will be made to them.

A motion to dismiss the petition was filed at the close of the evidence. The fundamental contention of the respondent, as we see it, is that the trial judge erred in his procedure. He sets that out in his findings in these words: "I had before me the allegations and the findings of the court in the disbarment proceedings in the Federal court, all the testimony in stenographic form, the arguments of counsel, the exhibits, and a copy of the findings of the judge and his order for removal. No testimony, however, was taken or permitted by me to be taken at the hearing before me bearing on the merits of the issues presented in the proceedings in the Federal court. In determining the effect to be given to the judgment of disbarment in that court, I have adopted the rule prescribed in similar circumstances in the case of *Selling* v. *Radford*, 243 U. S. 46. Conformably to that rule, while I do not deem the order of the Federal court to be binding on this court as a thing adjudged, I consider that it is my duty to give effect to the finding and order of that court so far as it establishes gross personal and professional misconduct on the part of the respondent and the want of fair private and professional character, subject, however, to the limitations prescribed in the case cited, viz: (1) that there was no want of notice or opportunity to be heard in the Federal court; (2) that there was no such infirmity of proof as to the facts found to have established gross personal and professional misconduct, and the want of private and professional character as to give rise to a clear conviction on my part that I could not justly accept as final the conclusion of the Federal court; (3) and that no other grave reason exists which convinces me that to allow the natural consequences of the judgment in the Federal court to have their effect would conflict with my duty not to disbar except upon the conviction that under the principles of right and justice I am constrained so to do.' The respondent admittedly had due notice and opportunity to be

heard in the Federal court, was present and represented by counsel, testified at the hearing and was fully heard. The full transcript of the testimony at that hearing, which I had before me, the exhibits, the full and careful findings of the court and the arguments of counsel before me as to the strength and weight of the testimony, disclose no infirmity in the proof establishing the want of private and professional character and the guilt of giving misleading testimony with intent to deceive; nor has any reason been disclosed which convinces me that to allow the natural consequences of judgment of the Federal court to have their effect would contravene any principle of right and justice."

There can be no successful contention to the effect that the trial judge did not follow governing principles of law as to the effect of the disbarment in the Federal court which he thus laid down for his guidance. There can be no doubt as to the soundness of those principles. We accept without further discussion the decision of *Selling* v. *Radford* as stating the law of this Commonwealth. The differences between the facts of that case and those of the case at bar relate to immaterial details and do not affect the dominating principles set forth in that opinion.

The motion to dismiss was denied rightly because the decree of disbarment by the Federal court coupled with the findings by the Federal judge made out at least a *prima facie* case. It was sufficient evidence on the issue involved to require a decision on the issue presented on the petition. It was competent evidence. *De Propper, petitioner*, 236 Mass. 500, 502.

The documentary evidence as to proceedings in the Federal court introduced in evidence before the trial judge was not hearsay. It was admitted but to show the circumstances out of which arose the disbarment proceedings in the Federal court, and what took place there. A proceeding for disbarment being civil and not criminal in its nature, the rules of evidence applicable to civil trials rightly were enforced. *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 183. See *Attorney General* v. *Pelletier*, 240 Mass. 264, 305.

It is to be observed that the trial judge received at the

request of the respondent stenographic transcript of the whole testimony and all exhibits which were before the Federal court on the petition for disbarment. Every opportunity thus was accorded to the respondent to show all grave reasons likely to affect the conscience of the trial judge against allowing to the judgment of disbarment by the Federal court its natural consequences.

There was no such irregularity in the proceeding before the Federal court as to affect the force of its decision. There appears to have been the utmost fairness throughout the hearing in that court as disclosed on the present record. As hereinbefore pointed out, it was no part of the duty of the trial judge to review what took place in the Federal court.

While the findings of the Federal court were on several charges in favor of the respondent, several others were found against him. Among these was the most serious as affecting his professional character. That finding in effect was that at a hearing on a motion for attachment for contempt he gave testimony which was misleading for the deliberate purpose of leading the court astray. The ultimate finding was that he had made "a wilful and deliberate attempt to deceive the court" with reference to a certain circular letter sent out by him and that if "his testimony, given at the hearing in the contempt proceeding, did not amount to wilful perjury, it was an attempt to deceive the court." The conclusion that such conduct was a gross violation of an attorney's oath and universally held sufficient to warrant disbarment cannot be controverted. Such person is not fit to remain an attorney at law, and from that vantage ground to prey upon the confiding credulity of clients, and to pollute the public welfare by attempting the deception of those charged with administering justice. It is not necessary to determine whether the sufficiency of the evidence in the Federal court to support these findings was open before the trial judge, *Matter of Sleeper*, 251 Mass. 6, at page 12, because plainly the findings were amply warranted. It is no answer that the attempt to deceive the court was not successful. That fact does not palliate the offence or exonerate the respondent from the consequences of conduct violative of a

primal duty of an attorney. Common honesty is essential for every lawyer. The want of it constitutes ground for disbarment.

The factor that the respondent had been found guilty of contempt in the Federal court is irrelevant. That adjudication rested on matters occurring before that hearing. The disbarment was founded on false testimony given at that hearing. The contempt of court and the cause for disbarment were wholly diverse. There is nothing in *Ex parte Robinson*, 19 Wall. 505, at all inconsistent with this conclusion. Disbarment may be grounded upon deceit or perjury committed in a proceeding for contempt of court.

The delay of three years in presenting the present petition after the disbarment in the Federal court is no defence. The main thing is whether the professional or personal character of the respondent shows that he is unfit to remain an attorney at law.

It is not necessary to analyze further the several findings of the Federal court. Out of ten charges there preferred six were found to be sustained. Some of them standing alone might not have been regarded as sufficient cause for disbarment. There is nothing in the findings or in the record to show that any error was committed by the trial judge in giving to those findings their natural effect.

The petition set forth cause for disbarment. Hence copies of the pleadings and findings of facts in the Federal court rightly were received in evidence.

The evidence offered to show that the respondent was never a member of the bar of the United States District Court for the District of Massachusetts was rightly excluded. That point is foreclosed by what has been said respecting the plea in abatement and plea in bar.

Evidence offered to control the findings of fact made by the Federal court was excluded rightly. That point is disposed of by what has already been said and by *Selling* v. *Radford*, *supra*.

The respondent has not been deprived of his property without due process of law. He has had both in the Federal court and in the trial on this petition ample notice and full

opportunity to be heard according to established principles of law.   He has been accorded all constitutional rights. *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 125–128.

Every argument put forward in behalf of the respondent has been fully considered.   There is nothing in any of them to indicate error.

*Both bills of exceptions overruled.*