152 So. 229

**Ex parte THOMPSON.**

6 Div. 214.

Supreme Court of Alabama.

March 9, 1933.

Rehearing Denied June 9, 1933.

Further Rehearing Denied Oct. 12, 1933.

Rehearing Denied to Bar Commission Dec. 14, 1933.

Further Rehearing Denied Jan. 25, 1934.

Arthur Fite, of Jasper, and Ernest Matthews, of Birmingham, for appellant.

J. W. Gillon, Jr., Jim C. Smith, W. H. Sadler, Jr., and Frank Bainbridge, all of Birmingham, for appellee.

116

KNIGHT, Justice.

Disbarment proceedings instituted before the board of commissioners of the state bar by Marvin Woodall, Stuart Stone, and J. Wiley Logan, "as members of the Grievance Committee of the Tenth Judicial Circuit of Alabama" against the appellant, Von L. Thompson, an attorney at law in the state of Alabama. These proceedings resulted in the conviction by the said board of the appellant, and an order was entered in the cause disbarring and excluding the said Thompson from the practice of law.

It is made to appear from the record that the said Marvin Woodall, Stuart Stone, and J. Wiley Logan were duly appointed as the grievance committee of the bar in and for the tenth judicial circuit of Alabama, and constituted such committee at the time of the commencement of the proceedings in this cause.

The authority, if any, for the institution of the proceedings against this appellant is predicated upon an act of the Legislature of Alabama, entitled, "An Act to provide for the organization, regulation and government of the State Bar including admissions and disbarments of lawyers," Gen. Acts 1923, p. 100 et seq. (and which is carried into the Code as sections 6220–6239, and 3318), and upon amendments to said act passed at the regular session of the Legislature of Alabama of 1931, amending sections 2, 6, 10, 11, and 21, and sections 14 and 15 of said original act. Gen. Acts 1931, pages 284 and 683.

On the 26th day of August, 1931, the above-named members of the grievance committee of the tenth judicial circuit of Alabama, pursuant to the terms and provisions of said original act, and the act amendatory thereof, filed with the board of commissioners of the state bar a complaint in writing, duly sworn to by each member of said grievance committee, wherein and whereby they charged the said Von L. Thompson, as such attorney at law, with violating or failing to comply with rule No. 27 of section A of the rules governing the conduct of persons admitted to practice law in the state of Alabama, as heretofore formulated and promulgated by the board of commissioners of the state bar, and since the adoption thereof in this: That in case No. 50090 in the circuit court of the tenth judicial circuit of Alabama, wherein E. I. DuPont deNemours & Co., a corporation, was plaintiff and Von L. Thompson was defendant, there was a summary judgment rendered by the court on February 2, 1929, for $583.44, against said defendant and in favor of said plaintiff for money collected by the defendant as its attorney, and upon which judgment an execution has been issued, and has been returned "no property." This complaint was duly signed by each of the grievance committee.

A copy of said complaint was served upon the said Von L. Thompson by the sheriff of Jefferson county, Ala., on the 26th day of August, 1931.

April 14, 1932, was first set and fixed for the hearing of said charges, and the defendant was given due notice thereof, as well as of the place of hearing. By a subsequent order, August 1, 1932, was fixed and set for the hearing, and the courthouse, in Jefferson county, was fixed as the place of hearing. On that day, the said Thompson appeared and filed numerous grounds of demurrer to the "complaint or petition." These demurrers take the point that the statutes under which the proceedings were instituted are unconstitutional and void, being in violation of sections 44, 13, 11, 139, and 43, respectively, of the Constitution of Alabama.

██ Upon the argument of the case, as well as in briefs filed, the appellant's principal attack upon the statute is that it denies

him a trial by jury of the charges preferred against him. If this contention is well founded, then it would be useless for us to consider the other questions presented by the appeal. We will, therefore, give first consideration to this contention.

The Mississippi territory was created by Act of Congress in the year 1798, and the states of Alabama and Mississippi were thereafter created out of that territory. Mississippi in the year 1817 and Alabama in 1819.

At the time of the admission of Alabama and Mississippi into the Union as states, there existed certain territorial statutes, among them, one providing for the admission of attorneys to the bar, and for their suspension and exclusion. This statute appears in the shape of an act of the territorial Legislature of Mississippi territory in Toulmin's Digest of the Laws of Alabama at page 22. The third section of this territorial act reads:

"That if the judges of the superior courts, from their own observation, detect any malpractice in the said courts, in any counsel or attorney of those courts; or if complaint in writing be made to them of such mal-practice in the said courts, or in the county courts of any county, the party accused shall be summoned to show cause why an information should not be filed against him; and if such information should be ordered, and the counsel or attorney so offending should be found guilty of the matter therein charged, the said judges of the superior courts may either suspend his license during a certain time, or vacate it altogether, as they shall judge most proper; *first ordering a jury to be impaneled for the trial of such information.* And the judges of the superior, and justices of the county courts, shall have power to fine any attorney for misbehavior or contempt offered to them, and may cause any attorney practicing in said courts, to find security for his good behavior." (Italics supplied.)

A provision for jury trial in disbarment proceedings has been brought forward in every Code of this state, certainly down to 1923.

It is urgently and earnestly insisted by learned counsel appearing here for appellant that this right to a jury trial, in such proceedings, having been given to an accused attorney by the above-quoted section of the territorial Legislature, and being in force at the time of the adoption of the first state Constitution in 1819, thereby received constitutional sanction in such way as to place the right beyond future legislative interdiction.

It is further insisted by the appellant that section 11 of the present Constitution of Alabama, corresponding to section 28 of art. 1 of the Constitution of 1819, viz., The right of trial by jury shall remain inviolate, extends not only to all cases in which the prerogative existed at common law, but to all cases where this right was secured by statute at the time

the Constitution was adopted. Diligent counsel on both sides of this litigation have brought to our attention many adjudged cases bearing upon this vexed question, and their briefs leave no room to doubt that they have made far-reaching investigation of the law in order to aid this court in reaching a proper solution of the question now before us.

In determining the constitutional question presented here, it is necessary that we should consider other pertinent provisions of that instrument, because its several provisions must be construed as standing in pari materia.

"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Constitution, § 42.

"The judicial power of the state shall be vested in the senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the supreme court, and to consist of not more than five members, as the legislature from time to time may establish, and such persons as may be by law invested with powers of a judicial nature," etc. Section 139, Constitution 1901.

We have mentioned the above provisions of the Constitution for the reason that we shall have occasion hereafter in this opinion to allude to the same.

We shall first consider what were the inherent powers of the courts, at common law, over attorneys, with respect to suspension and disbarment. A short review of the history of the profession "in its home across the seas," will suffice to show the plentitude of control there asserted over the behavior of attorneys. In the parent country an accused attorney had no right to jury trial when brought before the courts to defend his conduct as an attorney.

In the case of Samuel H. Randall, petition for mandamus, 11 Allen (Mass.) 473, Chief Justice Bigelow, writing for the court, said with respect of the power of the courts over attorneys: "On the contrary, at common law an attorney was always liable to be dealt with in a summary way for any ill practice attended with fraud or corruption, and committed against the obvious rules of justice and honesty. No complaint, indictment or information was ever necessary as the foundation of such proceedings. Usually they are commenced by rule to show cause, or by an attachment or summons to answer; but these are issued on motion or bare suggestion to the court, or even on the knowledge which the court may acquire of the doings of an attor-

ney by their own observation. No formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding. Sometimes they are founded on affidavit of the facts, to which the attorney is summoned to answer; in other cases, by an order to show cause why he should not be stricken from the roll; and when the court judicially know of the misconduct of an attorney, they will of their own motion order an inquiry to be made by a master without issuing any process whatever, and on the coming in of his report will cause his name to be stricken from the roll. Bac. Ab. Attachment, A, Attorney, H, and cases cited. The King v. Southerton, 6 East, 143. In the Matter of Elsam, 3 B. & C. 597; Id., 5 D. & Ry. 389." In the English jurisprudence, trial by jury had no place in proceedings to suspend or to disbar an attorney, certainly up to the time of our separation from the mother country. If any such right has ever existed, counsel for appellant have overlooked bringing that fact to our attention.

We will in this opinion review the authorities in many of the states with reference to the proceedings of the nature now under consideration.

Counsel for appellant insist that the right of trial by jury is not limited to cases where the right existed at common law, but extends to all cases where the right existed by statute at the time of the adoption of the particular Constitutions with respect to this particular kind of proceedings. Is the contention sound?

In considering this question, the nature of the proceedings, as well as the nature of the action, must be borne in mind. The action for disbarment of an attorney is neither, strictly speaking, a civil action, nor is it a criminal one. It is sui generis in nature. The purpose of the proceedings is not for recovery of property or damages, on the one hand, nor is it designed for punishment on the other. Its whole object is to purge the bar of a member who, it is supposed, has, since his admission, become unfit to longer remain a member of the bar.

As heretofore pointed out, the right of the courts in England to deal summarily with dishonest and unfit attorneys existed through the centuries, and up to the present time, notwithstanding it was solemnly proclaimed in that great instrument—Magna Charta: "No freeman shall be taken, nor imprisoned, nor disseized, nor outlawed, nor exiled, nor destroyed, in any manner; nor will we pass upon him, nor condemn him, but by the lawful judgment of his peers, or by the law of England." This concession by King John in no wise abrogated or lessened the courts' inherent control and jurisdiction over attorneys. Thereafter, the courts continued to disbar attorneys by summary process.

Counsel for appellant, in one of the excellent briefs on file, has listed twenty-nine states, namely, Florida, Virginia, Washington, Georgia, California, Wisconsin, Pennsylvania, New Jersey, Maine, Michigan, South Carolina, New Hampshire, Tennessee, Idaho, Ohio, Oregon, Oklahoma, Illinois, Rhode Island, North Carolina, Nebraska, Arizona, Connecticut, Minnesota, Montana, North Dakota, South Dakota, and Texas, as supporting this contention that the right of trial by jury extended to, and included not only cases where such trial by jury existed at common law, but also to cases where the right existed "by law" at the time of the adoption of the Constitution.

It is true that in the Constitutions of the states above mentioned there are provisions to the effect that the right of trial by jury shall remain inviolate. But let us see how these provisions were applied in the several states as affecting the inherent rights of the courts in dealing with attorneys in disbarment proceedings. We shall take up each case in the order stated by counsel.

Florida—This is one of the states listed by appellant.

However, in the case of State of Florida, ex rel. J. Dennis Wolfe v. William Kirke, Judge of the County Court of Escambia County, 12 Fla. 278, 95 Am. Dec. 314, the Supreme Court of that state held, in a disbarment proceeding brought against an attorney, that the court had the inherent right to disbar an attorney; that such power is essential to the maintenance of their own dignity and the respectability of their officers; and that the statutes of the states regulating the admission of attorneys do not affect the power of the courts to disbar an attorney. This indicates clearly that trial by jury in such cases has no place in the proceedings to disbar an attorney.

California—This is also one of the states listed by appellant. Let us see what the practice there is in the matter of disbarment of attorneys. We find that no jury is provided by statute of that state for the trial of an accused attorney, and that the court hears and determines the issue. E. M. Barnes, Plaintiff, v. District Court of Appeal, etc., 178 Cal. 500, 173 P. 1100.

Connecticut—This state is also listed by appellant. In that state no jury is allowed the accused attorney. The court proceeds by way of "an information." If charges are sustained, the court makes the order of removal. In re Westcott, 66 Conn. 585, 34 A. 505; Fairfield County Bar v. Taylor, 60 Conn. 12 (e), 22 A. 441, 13 L. R. A. 767.

Illinois—This state is also listed by appellant. In this state, in disbarment proceedings, the court proceeds by "information," instituted by the Attorney General, and the court hears and determines the issue without

the aid of jury. In the case of the People v. Palmer, 61 Ill. 255, that court observed: "This court is responsible, to some extent, for the honesty and capacity of those who shall *minister at the altars of justice*. We must grant the license to practice, *and in a proper case, it is our duty to disbar*." (Italics supplied.) And in the case of People ex rel. H. J. Hamlin v. Charles H. Payson, 215 Ill. 476, 74 N. E. 383, 386, Chief Justice Ricks observed: "Respondent's license * * * constitutes him an officer of the court. So, too, are all other attorneys enrolled in this court. Their acts in the line of their profession are from authority of this court and as its officers, and if they be blameworthy they bring discredit not alone upon the profession, but upon the court. The relation of the court and its attorneys to the people is one of high responsibility, and involves on the one hand absolute trust and confidence, and on the other absolute fidelity and honesty."

Maine—Another state listed by appellant. In this state the court proceeds in the matter of disbarment of attorneys by "information" and no jury is allowed. Chapter 93, p. 1293, §§ 37 to 40, inclusive, of the Rev. St. 1930.

In Maine, the Supreme Court, speaking on the inherent power of the court to remove an attorney for misconduct, says: "When such a case arises from whatever acts or causes, the cardinal condition of the attorney's admission to the bar, the possession of 'a good moral character,' is forfeited, and it will become the solemn duty of the court upon a due presentment of the case to revoke the authority it gave the offending member as a symbol of legal fitness and moral uprightness, lest it should be exercised for evil or tarnished with shame." No jury trial is allowed in such proceedings. Sanborn v. Kimball, 64 Me. 140.

Michigan—Another state listed by appellant. Counsel for appellant seems to draw *much satisfaction* from the fact that the opinion in the case of Tabor v. Cook, 15 Mich. 322, cited to support the proposition: "The intention here is plain: to preserve to the parties the right to have their controversies tried by jury, in all cases where the right then existed"—meaning at the time of the adoption of the Constitution—was written by the "distinguished Judge Cooley."

We have, therefore, investigated with particular care the utterance of the Supreme Court of that state—the home of Judge Cooley—to see just what pronouncements have been there made upon this particular inquiry now before this court. We find:

In the case of Mills, an attorney, hailed before the Supreme Court to answer for professional misconduct, reported in 1 Mich. at page 392, Chief Justice Whipple of that court says: "As it is a condition precedent to his admission at the bar, that an attorney should possess a blameless moral character, I think he forfeits his rights as such attorney, upon a breach of that condition. When a license is granted to an attorney, we certify to the world, that he has been 'approved by the court for his good character and learning.' Upon this certificate the public have a right to rely. They may fairly presume, so long as the attorney retains his office, that his 'good character' continues to be 'approved by the court,' and that they may safely rely on his honor and integrity.

"Should this court, after being officially advised that one of its officers has forfeited the good name he possessed when permitted to assume the duties of his office, still hold him out to the world as worthy of confidence, they would, in my opinion, fail in the performance of a duty cast upon them by the law. It is a duty they owe to themselves, to the bar, and the public, to see that a power which may be wielded for good or for evil, is not entrusted to incompetent or dishonest hands. The extreme judgment of expulsion is not intended as a punishment inflicted upon the individual, but as a measure necessary to the protection of the public, who have a right to demand of us, that no person shall be permitted to aid in the administration of justice, whose character is tainted with corruption.

"*Upon principle, therefore, I think that the authority of this court over attorneys ought not to be restricted to the cases specified in the statute. And the reasoning by which I am conducted to this result is conclusive to show, that the legislature never intended to withhold from our courts the exercise of a power so necessary to preserve the administration of justice from pollution, and the public from imposition.*" (Italics supplied.)

In the case of Shepard, Attorney, 109 Mich. 631, 67 N. W. 971, 972, decided June 30, 1896, the Supreme Court of the state of *Michigan* was again called upon to hear and pass upon an appeal involving the removal or disbarment of an attorney. One of the legal questions presented involved the *right of the accused attorney to a trial by jury.*

In *that case the Supreme Court of Michigan said with respect to defendant's claim to a jury trial:* "We think it unnecessary to discuss the defendant's claim to a right of trial by jury. The control of admission to the bar is confined to courts, and juries have nothing to do with it. It has been the uniform practice for the judge to dispose of such matters."

And in Re Wool, 36 Mich. 299, this same court held that the proceedings to disbar an attorney was a summary one, and the essential requirements are that the defendant have reasonable notice and an opportunity to be heard in defense. "This is not a proceeding by way of punishment. * * * It is a measure necessary to the protection of the public, who have a right to expect that courts

will be vigilant in withholding, and, if already given, *withdrawing*, their certificates of qualification and character, upon which the public rely. Attorneys are officers in a sense, they must possess such qualifications as the law prescribes, *sanctioned by the certificate of the courts*, or they may not enjoy the privileges of the office."

South Carolina, another state listed by appellant's counsel, authorizes disbarment of attorneys without the right of trial by jury. The procedure is by rule to the attorney to show cause, why he should not be disbarred and his name stricken from the roll of attorneys. The inherent common-law right of the court to suspend or to disbar for misconduct is fully recognized. Ex parte Gadsden, 89 S. C. 352, 71 S. E. 952; State v. Jennings, 161 S. C. 263, 159 S. E. 627, 631 (1931). In the latter case it is said: "As an officer of the court, an attorney is at all times subject to its control. His admission to practice carries with it the ,imprimatur of the court and is prima facie a certificate of good moral character. In a proceeding for disbarment the court undertakes to ascertain 'whether the lawyer accused is no longer worthy to bear the court's imprimatur.' It is entirely within the discretion of the court, as the result of such investigation, what punishment shall be imposed. Complete disbarment, suspension; or terms and conditions are matters solely for the judgment of the investigating tribunal."

. New Hampshire, another state listed by appellant's counsel, authorizes disbarment without jury trial. Pub. Laws 1926, chapter 325, § 8. Let us, therefore, see what the Supreme Court of that state has had to say on this subject. In Delano's Case, 58 N. H. 5, 42 Am. Rep. 555, the Supreme Court of New Hampshire, speaking through Chief Justice Doe, says:

"This is a proceeding instituted *by the court* on the question whether Delano should be allowed to retain the office of attorney. *The facts have been found by a commissioner* appointed by an order of the circuit court, in the usual form. * * * [Italics supplied.]

" 'The court shall inquire in a summary manner into any charge of fraud, malpractice, or contempt of court, against an attorney, and, upon satisfactory evidence of his guilt, shall suspend him from practice, or may remove him from office.' Gen. St., c. 199, s. 7. If this statute affords a remedy only for misfeasance in the office of attorney, it does not apply to this case. We think the true construction is given in Mills' Case, 1 Mich. 392, where it is held that such a statute does not limit the common-law power of the court, and that an attorney may be suspended or removed for other causes than those mentioned in the statute. An attorney is a public officer. Admission to and expulsion from his office are regulated by law. He

takes an official oath. The public is entitled to ample protection against the danger of any abuse of the great powers of the office which the public by its agents has conferred upon him. When Delano was admitted, age and good moral character were the only necessary qualifications. *Legal knowledge and skill* were not required. But 'it is indispensable that an attorney be trustworthy. And he is not trustworthy if he is capable of improperly applying to his own use his client's money, whether he intends to return it or not. It would be an unreasonable construction of the statute, *to hold that his license cannot* be revoked when it invites the community to trust him in a particular wherein he cannot safely be trusted. The legislature could not have intended to abolish the ancient requirement of his continued integrity, and require another branch of the government to-continue to hold him out to the world as worthy of confidence when the holding out becomes. false and fraudulent. Mr. Delano is removed from the office of attorney." This pronouncement answers appellant's contention that a right to jury trial in disbarment proceedings exists in the state of New Hampshire.

Tennessee—This is another state listed by appellant. No jury trial is given in disbarment proceedings in that state. Such proceedings may be instituted on the court's own motion, or on petition duly sworn to by any bar association, etc.

In the case of Calvin M. Smith v. State of Tennessee, 1 Yerg. 228, the Supreme Court of Tennessee held that the courts of Tennessee have the power, without the intervention of a jury, to strike an attorney from the roll, for improper conduct as a member of the bar. In the case just cited the court observed: "The principle is almost universal in all governments, that the power which confers an office, has also the right to remove the officer, for good cause." Fields v. State, 1 Mart. & Y. (Tenn.) 168.

Idaho—this state is also listed by counsel for appellant. Yet we find, upon examination of the statute laws of that state, no jury trial is provided for.

Ohio—This state is also listed by appellant's counsel as sustaining his contention as to jury trial, and the right thereto. On investigation we do not find any provision for a jury trial for the accused attorney.

Oregon—This state is also listed by appellant's counsel. In that state the Supreme Court may suspend or remove an attorney, without jury trial. Oregon Laws, 1920, §§ 1092–1100 (now Code 1930, §§ 32-502 to 32-517).

In the case of Ex parte Mason, 29 Or. page 18, 43 P. 651, 652, 54 Am. St. Rep. 772, the court says: "The statute prescribes and enumerates the causes which may subject an at-

torney to the penalty of removal or suspension. [Hill's] Code, § 1047." (Then follows an enumeration of causes.) Continuing, the court says: "Here is a statutory regulation of the power of the court to strike an attorney's name from the roll. The power itself *exists, inherently and independent of the statute,* and 'is necessary for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients.'" This demonstrates conclusively the attitude of that high tribunal with reference to the right of a trial by jury in disbarment, no matter how it may incline to jury trials in other cases.

The proceedings in the above cause were instituted in the Supreme Court by the state, upon the relation of the members of the grievance committee of the Oregon state bar association.

Illinois—This state is also listed by counsel for appellant. On investigation of the authorities of that state, we find that proceedings are commenced by "an information" filed with the Supreme Court, on relation of the Attorney General. No jury is provided. And in the case of People, ex rel. P. J. Lucey, Atty. Gen., v. John S. Stonecipher, 271 Ill. 506, 111 N. E. 496, 499, it is held: "On an application for the disbarment of an attorney he is entitled to a trial before the court upon evidence taken according to the rules of the common law." No right in the accused to meet the witnesses face to face. It is held not to be a criminal prosecution, and the rules prevailing in taking evidence in criminal cases do not apply in disbarment proceedings.

Pennsylvania—This state is also listed by appellant. In disbarment proceedings no right is given accused attorney to a trial by jury for malpractice or misconduct as an attorney. In the case of Ex parte Steinman, 95 Pa. 220, 40 Am. Rep. 637, the Supreme Court of Pennsylvania said: "We entertain no doubt that a court has jurisdiction without any formal complaint or petition upon its own motion to strike the name of an attorney from the roll in a proper case, provided he has had reasonable notice and been afforded an opportunity to be heard in his own defence."

Wisconsin—The appellant also lists this state as sustaining his contention for a jury trial. Upon investigation, we find that in that state an attorney may be disbarred by civil action, and no jury is provided for. Statutes Wisconsin 1921, c. 117, § 2586, subsec. 7.

Virginia—This state is also listed by appellant. The Supreme Court and other courts of record may suspend or remove an attorney. Formerly, a jury was allowed to the accused in all courts—even in the Supreme Court, but by the present statute the Supreme Court may suspend or remove an attorney without intervention of a jury.

Washington—This state is also listed by appellant. Upon investigation, we find that in proceedings for the disbarment of an attorney, the cause is heard by the court, and no provision is made for jury trial.

North Carolina—This state is also listed by appellant. The statute on the subject of disbarment allows an accused attorney, when brought before the court to answer in disbarment proceedings against him, a trial by jury.

Georgia—In the trial of disbarment proceedings against an attorney, a jury trial is allowed. Civil Code of Georgia 1910, § 4976.

Nebraska—This state is also listed by appellant's counsel. In order to acquaint ourselves with the pronouncements of the Supreme Court of that state in cases of disbarment of attorneys, we have made some exploration into its decisions. Our research has brought to our attention the case of In re Disbarment proceedings of William L. Newby, reported in 76 Neb. 482, 107 N. W. 850, 853. In this case Chief Justice Sedgwick, writing for the court, says: "It is a principle of general, if not uniform, application that the court which is intrusted with the power and the duty of determining the qualifications for admission to the bar has, by implication, the power and duty also to determine when those qualifications are wanting, and when the privilege of that high calling has been forfeited. This court has the sole power of admission to the bar, *and therefore has sole power to annul such admission when sufficient cause appears.*" (Italics supplied.)

Arizona—This state has a statute giving to accused attorneys the right of trial by jury.

Minnesota—This state is also listed by the appellant. Upon examination of the procedure adopted in this state for the disbarment of attorneys, we find that petition therefor must be filed with the Supreme Court, and that court proceeds to hear and determine the cause. No jury trial is allowed. State Board of Law Examiners v. Reineke, 124 Minn. 528, 144 N. W. 1134.

Montana—This state is also listed by appellant. An examination of the procedure for disbarment of attorneys in that state discloses the fact that the Supreme Court of the state exercises the jurisdiction to disbar attorneys, without jury. Rev. Codes, 1921, § 8963; In re Wellcome, 23 Mont. 213, 58 P. 47.

North Dakota—This state is also listed by appellant. We find that the proceeding to disbar an attorney is held by the court, without jury. Compiled Laws 1913, §§ 800, 802.

South Dakota—This state is listed by appellant. In this state exclusive jurisdiction to disbar an attorney is given the Supreme Court. No jury trial of the issue is given. In re Harbin, 27 S. D. 31, 129 N. W. 561.

Texas—This state is listed by appellant, and an examination of the statutes discloses that a jury trial is expressly authorized.

Oklahoma—This state is also listed by appellant.

In the case of State Bar Commission ex rel. Williams v. Sullivan, 35 Okl. 745, 131 P. 703, 707, L. R. A. 1915D, 1218, it is held: "The Supreme Court of this state has exclusive power to admit attorneys to practice law before it and in the inferior courts; * * * and * * * independent and aside from the statutory grounds of disbarment, the inherent power to suspend or disbar attorneys." In support of this pronouncement, this court then proceeds to cite the following cases from other jurisdictions: In re Ex parte Wall, 107 U. S. 265, 2 S. Ct. 569, 27 L. Ed. 552; Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 646; 4 Cyc. 905; In re Newby, 76 Neb. 482, 107 N. W. 850; In re Robinson, 48 Wash. 153, 92 P. 929, 15 L. R. A. (N. S.) 525, 15 Ann. Cas. 415; In re Wilson, 79 Kan. 450, 100 P. 75; In re Durant, 80 Conn. 140, 67 A. 497, 10 Ann. Cas. 539; In re Breen, 30 Nev. 164, 93 P. 997, 17 L. R. A. (N. S.) 572; In re Ebbs, 150 N. C. 44, 63 S. E. 190, 19 L. R. A. (N. S.) 892, 17 Ann. Cas. 592; In re Thatcher, 80 Ohio St. 492, 89 N. E. 39; In re Egan, 22 S. D. 355, 117 N. W. 874; Danforth v. Egan, 23 S. D. 43, 119 N. W. 1021, 139 Am. St. Rep. 1030, 20 Ann. Cas. 418; Underwood v. Commonwealth (Ky.) 105 S. W. 151; In re Simpson, 9 N. D. 379, 83 N. W. 541; State ex rel. Atty. Gen. v. Burr, 19 Neb. 593, 28 N. W. 261; State v. Mosher, 128 Iowa, 82, 103 N. W. 105, 5 Ann. Cas. 984.

This court also in that case held "that the right to practice law is not a vested right but a mere privilege." 4 Cyc. 898; State ex rel. Mackintosh, Pros. Atty., v. Rossman, 53 Wash. 1, 101 P. 357, 21 L. R. A. (N. S.) 821, 17 Ann. Cas. 625.

New Jersey—Another state listed by appellant. No jury is allowed in disbarment proceedings in that state. Proceedings are had by "information," before the Supreme Court. In re Wartman (N. J. Sup.) 31 A. 1040.

The foregoing gives a review of disbarment proceedings in the twenty-nine states listed by appellant as holding that the right to trial by jury shall extend not only to those cases where the right existed at common law but to such other cases where the right existed by statute at the time of the adoption of the Constitution. In a vast majority of those states, the review shows, a jury trial was not provided for, or allowed in disbarment proceedings.

We will now briefly review the proceedings to disbar an attorney in the other states of the Union, not included among the above twenty-nine.

In Delaware, the proceedings are heard by the court, and no jury is provided.

In Iowa, Code 1924, § 10934, the issue is tried by the court, without the intervention of a jury.

In Kansas, the issue is determined by the court, without jury. § 7—115 of Rev. St. 1923.

In Kentucky, it is held that courts, independent of statute, have the inherent right to control and regulate the official conduct of court officers, and to inflict upon them punishment for official misconduct; and a court has jurisdiction without any formal complaint or petition, upon its own motion, to strike the name of an attorney from the roll, provided he has had reasonable notice and opportunity to be heard. Commonwealth v. Roe, 129 Ky. 650, 112 S. E. 683, 19 L. R. A. (N. S.) 413; Lenihan v. Commonwealth, 165 Ky. 93, 176 S. W. 948, L. R. A. 1917B, 1132.

In Maryland no jury trial is provided for. Code, article 10, § 10. The issue is determined by the court.

In the state of Utah, the proceedings to disbar an attorney may be taken by the court on its own motion, or on information, and the court determines the issue, without intervention of a jury. In the exercise of its inherent powers, the court in a summary way will disbar an attorney for misconduct. Morrison v. Snow, 26 Utah, 247, 72 P. 924; In re Platz, 42 Utah, 439, 132 P. 390.

In Louisiana, the court determines the issue, without intervention of a jury. Section 22 of the Code.

In Indiana, by statute the accused attorney is given the right to trial by jury. Reilly v. Cavanaugh, 32 Ind. 214; and in Arkansas, the right of trial by jury in such cases is secured by statute to the accused attorney. In Wyoming, a similar right is given by statute, on demand.

In Colorado, disbarment proceedings are commenced by rule to show cause, issued by the Supreme Court, and it determines the issue without jury.

In Nevada, proceedings are had before, and determined by, the Supreme Court, without intervention of a jury. Comp. Laws 1929, §§ 565, 604, and 616; Washoe County Bar Ass'n v. Scoular, 44 Nev. 208, 190 P. 899.

New Mexico—In this state the proceedings to disbar are instituted and had in the Supreme Court, without jury. The Chief Justice issues the rule on motion of the attorney general. Codification of Laws of New Mexico 1915, § 361 (now Comp. St. 1929, § 9-135).

Missouri—The decisions of the state of Missouri, in the matter of disbarment of attorneys, have more than an ordinary significance in determining the questions now before us, as we will show by a short quotation from the case of State ex rel. Walker, Atty. Gen., v. Harber, 129 Mo. 271, 31 S. W. 889, 892. In this case one Harber, an attorney, was brought before the Supreme Court of Mis-

souri in a proceeding seeking his disbarment. It was objected by the accused attorney that the Supreme Court, being a court of appellate jurisdiction, could not entertain and determine proceedings of this character, which were original proceedings instituted in the Supreme Court by the state on relation of the Attorney General. In that case the Supreme Court held, speaking through Sherwood, J.: "The foregoing statement of the controlling facts in this case furnishes a sufficient basis on which to ground the following remarks and expression of our views on the salient points presented by this record, and the briefs and arguments of counsel.

"1. And first, as to the jurisdiction of this court to entertain and determine proceedings of this character. On this point it would seem there can be no room for two opinions. *All courts having power to admit attorneys to their bar possess, as a necessary and inherent incident of such power*, the right to disbar them for unworthy behavior. The authorities in this regard will be found collected in the brief of relator. The proposition, however, is too plain to require the citation of authorities in its support." (Italics supplied.) State ex rel. v. Mullins, 129 Mo. 231, 31 S. W. 744.

New York—The Appellate Division of the Supreme Court in each department is authorized to suspend or remove attorneys on notice, without intervention of a jury. And the courts have the right in that state to strike from the roll in a summary proceedings attorneys guilty of malpractice in their official character. In the matter of Peterson, 3 Paige (N. Y.) 510; In re John Percy, 36 N. Y. 651; In the matter of Eldridge, 82 N. Y. 161, 37 Am. Rep. 558. And it was in the case of People of the State of New York ex rel. Karlin v. Charles W. Culkin, 248 N. Y. 465, 162 N. E. 487, 489, 60 A. L. R. 851, that Chief Justice Cardozo, in discussing the right of the court to institute general inquiry as to the conduct of a certain attorney, gave expression to the following timely words: "'Membership in the bar is a privilege burdened with conditions.' Re Rouss, supra, 221 N. Y. page 84, 116 N. E. 782, 783. The appellant was received into that ancient fellowship for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice. His co-operation with the court was due, whenever justice would be imperiled if co-operation was withheld. * * * He might be censured, suspended, or disbarred for 'any conduct prejudicial to the administration of justice.'"

In Massachusetts, trial by jury has no place in disbarment proceedings. In the case of Bar Association of the City of Boston v. Peter J. Casey, 211 Mass. 187, 97 N. E. 751, 39 L. R. A. (N. S.) 116, Ann. Cas. 1913A, 1226, it is held that all proceedings for disbarment are commenced by rule to show cause; and on the coming in of the report of the master, the court will cause the name of the attorney to be stricken from the roll. No technical or formal description of the act complained of is required.

In the recent advisory opinion of the Justices of the Supreme Court of that state, furnished the Senate of the state of Massachusetts, the Supreme Court said: "There is nothing in the Constitution, either in terms or by implication, to indicate an intent that the power of the judiciary over the admission of persons to become attorneys is subject to legislative control. The grant of legislative competency to the General Court is in broad language (chapter 1 of the Constitution, and especially part 2, chapter 1, § 1, art. 4). But it is subject to the impressive limitations of article 30 of the declaration of rights already quoted. It does not embrace the power to override the judicial department of government as to the qualifications of those to be admitted to practice law. The inherent jurisdiction of the judicial department of government over attorneys at law is illustrated in several of our decisions to the effect that power to remove an attorney for misconduct, malpractice or deficiency in character, although recognized by statute (G. L. c. 221, § 40, as amended by St. 1924, c. 134), is nevertheless inherent and exists without a statute. In re Randall, petitioner, 11 Allen [Mass.] 472. Matter of Carver, 224 Mass. 169, 172, 112 N. E. 877, and cases cited. Matter of Ulmer, 268 Mass. 373, 397, 167 N. E. 749, and cases cited. *No sound distinction* can be drawn with respect to attorneys at law between the power to admit and the power to remove under the terms of the Constitution." In re Opinion of the Justices, 279 Mass. 607, 180 N. E. 725, 727, 81 A. L. R. 1059.

To the same effect is the holding of the Supreme Court of the United States, and the Supreme Court of the District of Columbia. Ex parte Wall, 107 U. S. 265, 2 S. Ct. 569, 27 L. Ed. 552.

This brings us down to a review of the conclusion reached on this point by our sister state Mississippi. Mississippi and Alabama, as heretofore pointed out, were created out of what was known as Mississippi territory, Mississippi in 1817 and Alabama in 1819. The Territorial Act of 1807, providing for jury trial of attorneys charged with malpractice, was in force for ten years in this territory before Mississippi was admitted into the Union. Upon investigation, we find that the present statute law of Mississippi does not provide for a trial by jury of an accused attorney. We further find that, in the case of Ex parte Cashin, 128 Miss. 224, 90 So. 850, 852, the attorney was disbarred by the court, without intervention of a jury. The court in that case used this pertinent language on the subject of the right of the accused to a trial by jury: "The court has

the power to protect itself against an unfit attorney, an officer of the court, and may hear the charges in order to purge the roll of his name, upon reasonable notice given of the time of the hearing of the charges presented for disbarment, thus affording an opportunity to be heard. The exercise of the power of the court in hearing and determining whether the attorney shall be disbarred *is not in contravention of the constitutional right of trial by jury. It is an exercise of judicial power in the regulation of the court's own officers, and to protect and preserve a clean and proper functioning of the tribunal.*" (Italics supplied.)

In the case of Lewis v. Garrett's Adm'rs, 5 How. (Miss.) 434, it was said by the court that "the bill of rights of the people of this state which declares that the right of trial by jury shall remain inviolate, has never been held to extend to questions in the trial of which a jury is not necessary by the ancient principles of common law."

It will be found from the foregoing collection of authorities that the courts in a vast majority of the states of the American Union are held to possess the inherent power to suspend or to remove an attorney, and only in a few states (herein pointed out) is the right of trial by jury given to an accused attorney.

■ Due consideration of the adjudged cases in the several states of the Union leads us to the conclusion—which is unescapable—that the courts have the inherent power to suspend or to remove attorneys without trial by jury. No matter how learned in the law a man may be, nor how skillful he might be in the conduct of suits at law, or equity, he can never be admitted to the bar until he can satisfy the court that he possesses that first requisite to admission to the bar, *a good moral character.* Such character he must have when he knocks at the door of the profession for admission, and such character he must have while enjoying the privilege and right to remain within the fold. When he ceases to be a man of good repute, he forfeits his right to continue as a member of the bar. "The power to declare this forfeiture is a summary one inherent in the courts, and exists, not to mete out punishment to an offender, but that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." Ex parte Bradley, 7 Wall. (U. S.) 364, 374, 19 L. Ed. 214; Fairfield County Bar Association v. Taylor, 60 Conn. 11, 12, 22 A. 441, 13 L. R. A. 767; Bar Association v. Greenhood, 168 Mass. 169, 46 N. E. 568; Ex parte Brounsall, 2 Cowp. 829; In re Durant, 80 Conn. 140, 67 A. 497, 500, 10 Ann. Cas. 539.

While this court is required to keep open house for all comers, who possess the required legal qualifications for admission to the bar, and who at the time possess good moral character, and who are so introduced, yet this court possesses the inherent right to banish those who prove themselves unfit to remain within the fold.

■ The proceeding for the disbarment of an attorney, strictly speaking, is neither civil nor criminal. It is of a sui generis nature, on account of the relation of the attorney to the court. "The exercise of the power of the court in hearing and determining whether the attorney shall be disbarred is not in contravention of the constitutional right of trial by jury." Ex parte Cashin, supra; In re Shepard, Attorney, 109 Mich. 631, 67 N. W. 971.

In reaching our conclusions, we have not overlooked the case of Montgomery & Florida R. Co. v. McKenzie, 85 Ala. 546, 5 So. 322, nor the cases of Alford v. State, 170 Ala. 178, 54 So. 213, Ann. Cas. 1912C, 1093, State v. Bley, 162 Ala. 239, 50 So. 263, and Costello v. Feagin, Judge, 162 Ala. 191, 50 So. 134. Suffice it to say that the court, in those cases, was not dealing with the matter of disbarment, an inherent power of the court, and, a proceeding sui generis. Nothing stated in those cases could be held to effect the question here considered.

■■ We will now address ourselves to a consideration of the question whether the Legislature of Alabama acted within constitutional bounds in creating the board of commissioners of the state bar, and in conferring upon it the powers enumerated in the act. No doubt it was attempted to confer upon the board thus created powers highly judicial in nature. This board is given authority to formulate rules governing the conduct of all persons admitted to practice and to investigate and pass upon all complaints that may be made concerning the professional conduct of any person who has been or who may hereafter be admitted to the practice of the law, and to formulate rules governing the reinstatement of members of the bar who have been disbarred and to pass upon all petitions for reinstatement. The board is empowered to provide for the taking of evidence, and, on hearing of any complaint against an accused attorney, in all cases in which the evidence, in the opinion of a majority of the board, justifies such a course, they are required to take such disciplinary action by public or private reprimand, suspension from the practice of law, or exclusion and disbarment therefrom, as the case shall in their judgment warrant, provided that in cases of exclusion and disbarment a majority of the board shall vote affirmatively before the exclusion and disbarment shall become effective. But the rules and regulations which may be formulated and adopted by

the board shall not become effective until the same shall have received the approval of this court, and the right of this court to approve or disapprove all or any part of the rules so formulated and adopted by the board is fully reserved to this court. More than this, this court is expressly given the right to review on petition of the party aggrieved, the action of the board, *and may, on its own motion, and without the certification,* inquire into the merits of the case, and take *any action* agreeable *to their judgment.* If this court should desire it, additional testimony may be taken.

Section 139 of the Constitution, as presently pertinent, reads:

"The judicial power of the state shall be vested in the senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the supreme court, and to consist of not more than five members, as the legislature from time to time may establish, *and such persons as may be by law invested with powers of a judicial* nature. * * *" (Italics supplied.)

Thus we find express constitutional warrant for conferring upon *this board* judicial functions; and this conclusion is supported by the decision of this court in the case of State Tax Commission v. Bailey & Howard, 179 Ala. 620, 60 So. 913. We fail to see, in the creation of the board of commissioners of the state bar with the powers conferred, any transgression of constitutional bounds by the Legislature, and, as for any constitutional objections assigned, and here argued, we hold that the act does not violate any of the provisions of the Constitution urged and assigned by appellant. Nor are we impressed that the act in any way violates section 45 of the Constitution, either because the subject of the act is not clearly expressed in its title, or because it contains more than one subject. The demurrers challenging the constitutionality of the board, with its enumerated powers, upon the stated grounds are not well taken, and were properly overruled.

■■ In one of the briefs filed here by appellant, the point is made that the facts averred in the complaint do not, as a matter of law, constitute a violation of rule 27 of "Rules Governing the Conduct of Attorneys." One ground of demurrer takes this point. Rule 27 is as follows:

"No person heretofore or hereafter admitted to practice law in Alabama shall misappropriate the funds of his client, either by failing to pay over money collected by him for his client, or by appropriating to his own use funds intrusted to his keeping, provided the circumstances attending the transaction are such as to satisfy the commission that the attorney acted in bad faith or with fraudulent purpose."

We think the charge set out in the complaint sufficiently shows the failure of the defendant to pay over money collected by the appellant for his client, and is otherwise sufficiently full and specific as for any objections urged thereto. We think and hold that the complaint was sufficient. In proceedings to disbar an attorney, formal and technical pleading is not essential. McCord v. State ex rel. Allen, 220 Ala. 466, 126 So. 873; Bar Association v. Casey, 211 Mass. 187, 97 N. E. 751, 39 L. R. A. (N. S.) 116, Ann. Cas. 1913A, 1226; In the matter of Ulmer, 268 Mass. 373, 167 N. E. 749.

The record shows that this case was tried upon the general issue, and a plea of the statute of limitations. The evidence has been examined, and we are of the opinion that the accused attorney, under the evidence, was guilty as charged in the complaint, and was properly so adjudged. Under the evidence, the proceedings were not barred by the statute of limitations.

We find no merit in the other contentions of appellant. It appears from this record that the appellant has been once before adjudged guilty of unethical conduct, and the sentence imposed was suspension from the practice of the law for two years.

Upon his return to the profession, after the expiration of his term of suspension, he has again offended. The board of commissioners of the state bar, after due notice and trial, reached the conclusion that this appellant has by his unlawful act forfeited his right to continue the practice of the law in this state.

In view of appellant's previous suspension, and of the nature of the charge against him in this case, we feel impelled by a sense of the solemn duty that we owe to the public, to the profession, and to the courts of this state to give full sanction and approval to the findings of the board, and to the exclusion of the appellant from the practice of law in this state.

Affirmed.

All the Justices concur.

### On Rehearing.

KNIGHT, Justice.

We have carefully considered the several briefs presented on this application for rehearing, some of which contain much caustic criticism of the opinion, upon the theory that a review of the law in the other states of the Union, and obtaining generally elsewhere, is not apropos of the question here presented. But we think counsel have misinterpreted the opinion in this regard, and misconceived the purpose which actuated this review of the law.

It is true that, in our opinion, the writer attempted to review the authorities in the other states of the Union, and elsewhere, and has possibly written at greater length than

the exigencies of the case actually required, but it was for the purpose of determining just how the courts of highest resort in those states had considered and determined such issues as were presented in the case at bar. Many of those states (if not all of them) have a constitutional provision very similar to our own, viz.: "That the right of trial by jury shall remain inviolate." (Const. 1901, § 11.)

We expressly stated, in our opinion handed down on the original submission, that, in considering the question of the right of trial by jury, the nature of the proceedings, as well as the nature of the action, and, we may here add, the cause of action, must be borne in mind.

The action for disbarment of an attorney is neither, strictly speaking, a civil action nor is it a criminal one. The purpose of the proceedings, as we have heretofore pointed out, is not for the recovery of property or damages, nor is it designated for punishment. Its whole object is to purge the bar of a member who has, since his admission, become unfit to longer retain the authority given him to practice law.

As we have heretofore pointed out, it seems to be the law that the power to exclude an attorney is commensurate with the power to admit. This must be granted.

Our review of the authorities of other states, including those cited by appellant, holding that the right of trial by jury shall remain inviolate, not only where the right existed at common law but by statute, at the time of the adoption of the Constitution, demonstrates beyond peradventure that these courts did not have in mind, and were not considering cases involving disbarment of attorneys. It is very evident to our mind, from the decisions cited by appellant's counsel, as well as those cited by us, that those courts never once associated the idea of a jury trial, as guaranteed by their respective Constitutions, with trials of attorneys in disbarment proceedings. This seems to be evident, for if an accused attorney has the right to demand a jury trial, then, of course, there can be no such thing as "the inherent power" of the court to disbar. The court would be met at the very threshold of the proceedings with the demand for a jury trial. Of course, if an accused attorney has the right to a jury trial, then this necessarily destroys the inherent power of the court over attorneys. The two rights cannot coexist.

We were, and still are, of the opinion that what has been said by the various courts of the Union in regard to the right of trial by jury, had no reference whatever to cases involving the disbarment of attorneys; this for the reason that in many of the states, where the highest courts hold that trial by jury shall remain inviolate, we find the same courts holding that attorneys are officers of the court, admitted by the courts in the exercise of judicial functions, and subject to removal by the court without jury trial.

In a case decided by the Supreme Court of Minnesota on May 5th, this year, entitled, "In the matter of the application of discipline of John D. Greathouse, an attorney at law of the state of Minnesota, 248 N. W. 735," we find that court holding:

"An attorney is not an officer of the state, in a constitutional or statutory sense of that term, but he is an officer of the court, exercising a *privilege during good behavior*. This privilege is granted by the court in the exercise of judicial power, not as a mere ministerial power. In re Garland, 4 Wall. 333, 378, 18 L. Ed. 366; Hanson v. Grattan, 34 Kan. 843, 115 P. 646, 34 L. R. A. (N. S.) 240; 6 C. J. 571, § 16." (Italics supplied.)

And we further quote from that opinion:

"The power to admit applicants to practice law is judicial and not legislative, and is, of course, vested in the courts only. Originally the courts alone determined the qualifications of candidates for admission, but to avoid friction between the departments of government, the courts of this and other states have generously acquiesced in all reasonable provisions relating to qualifications enacted by the legislatures. Hanson v. Grattan, 84 Kan. 843, 115 P. 646, 34 L. R. A. (N. S.) 240; State v. Cannon, 196 Wis. 534, 221 N. W. 603."

And continuing, the Minnesota court says:

"The judicial power of this court has its origin in the Constitution, but when the court came into existence; it came with inherent powers. Such power is the right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not. This same power authorizes the making of rules of practice.

"The privilege given to an attorney, authorizing him to practice his profession, is always subject to revocation for cause. It is well settled that a court which is authorized to admit attorneys has inherent jurisdiction to suspend or disbar them. This inherent power of the court cannot be defeated by the legislative or executive department. The removal or disbarment of an attorney is a judicial act. Randall v. Brigham, 7 Wall. 523, 535, 19 L. Ed. 285."

We cite this recent case of the Supreme Court of Minnesota for the reason that, while it is committed to the principal that a trial by jury shall remain inviolate, yet it recognizes the fact that disbarment proceedings do not come within that class of cases where the right of trial by jury exists.

We are still persuaded, as we attempted to say in the opinion rendered on the original submission, that the courts of the several states, including our own, in dealing with the

right of jury trial, did not have in mind jury trials in disbarment proceedings. From the very nature of such proceedings, and the purposes to be subserved, it could not have been contemplated that the constitutional provision with reference to trial by jury was intended to apply to disbarment proceeding matters wholly within the powers of the court. And we are still of the opinion that this court in the cases cited by counsel for appellant upholding the right of trial by jury did not contemplate cases of the nature of the one under consideration.

But it is insisted by counsel for appellant that inasmuch as the territorial statute and statutes since that day have provided for a jury trial in disbarment proceedings, therefore these statutes have received constitutional sanction, and the Legislature was powerless to confer upon any court, or person authorized to perform judicial functions, the right to disbar an attorney without the benefit of a trial by jury. As above pointed out, we are of the opinion that it was within legislative competence to create a board to initiate and hear these proceedings and render judgment thereon, subject to review by this court, and subject to such review by this court on its own motion, and with the right in this court to hear further evidence.

■ The board was created in aid of this court, and this court may adopt the findings and conclusion of the board, may alter or modify the same, and may take any action agreeable to its judgment.

The Act of August 9, 1923, appearing in the Code of 1923, as section 6228, expressly provides:

"The causes of removal or suspension of attorneys, and methods of proceeding in reference to such removal or suspension, as now existing, are hereby declared to be cumulative with the right and power herein given to the board of commissioners to reprimand, suspend, exclude, or disbar."

■ It is also urged that the Act of the Legislature of Alabama, 1931, approved June 6, 1931, Gen. Acts of 1931, page 284, is unconstitutional and void for the reason that the act attempts to amend a previous enactment, which had been codified in its appropriate place in the Code of 1923, and without reference to such codification. We do not think there is merit in this contention. In the case of Harper v. State, 109 Ala. 28, 31, 19 So. 857, 859, it is held:

"It is clearly settled in this state, that the legislature may amend an original act which has been amended and repealed, and disregard the intervening amendatory and repealing act. Wilkinson v. Ketler, 59 Ala. 306; State v. Warford, 84 Ala. 15, 3 So. 911; Ex parte Pierce, 87 Ala. 110, 6 So. 392; Dunbar v. Frazer, 78 Ala. 538."

We hold, upon the authority of these cases, and the argument supporting the same, that the Act of 1931, page 284, is not void for the reason that it attempts to amend a prior act, which has been carried into the Code.

■ It is also further urged that petitioner was adjudged guilty upon a vote of less than two-thirds of the entire board, and inasmuch as this court had not approved any rule of the state bar providing that an accused attorney could be suspended or disbarred by a majority vote of a quorum, the judgment of conviction was void. We cannot agree to this contention. The act itself provides that "a majority of the Board shall constitute a quorum and the majority of those present (if a quorum be present) shall be empowered to act as and for the entire Board." This provision of the statute was self-executing, so to speak, and needed no rule of the board, and consequently no approval of the rule, to fix the number of votes necessary to a due and legal conviction of the accused.

We are thus brought again to the consideration of the penalty to be imposed in the matter of the review of the action of the board. This court exercises a broad and comprehensive power including "the taking of additional evidence," if so desired, a power recognized by the Legislature in the language of section 6225 of the Code, wherein it is further said: "The supreme court may, and on petition of the party aggrieved must, in any case of suspension or disbarment from practice, review the action of the board, and may, on its own motion, and without the certification of any record, inquire into the merits of the case and take any action agreeable to their judgment." We are mindful of the responsibility resting upon us in the exercise of this power, and the duties of the court in the protection of the profession and public on the one hand, and on the other an earnest desire that no injustice be done to any individual member of the profession. The present case has been considered with other cases involving like principles of law, but varying in the facts. And to the dual purpose above stated, a final determination of each of these cases has been delayed that a further consideration may be given to the stated principle of law and that the evidence may be more closely examined. As to the law, we are not persuaded any error lies in the foregoing opinion and adhere thereto. As to the facts, the evidence has been again carefully examined. Its discussion here would serve no useful purpose. Suffice it to say the conclusion has been reached that the suspension from the practice of the profession for a period of eighteen months from this date (October 12, 1933) would in this case meet the ends of justice, and that the judgment of the board should be so modified. It will be so ordered.

The judgment of the bar commission is, therefore, modified so as to suspend and re-

strain the appellant from the practice of the law, as above indicated, and for the period stated.

All the Justices concur in this modification.

Judgment modified; application overruled.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.

THOMAS, J., dissents for reasons fully stated on the point indicated in Re Fred Fite, 152 So. 246, on other questions he agrees.

BROWN, Justice.

After more mature consideration of the question in this case, I am impelled to withdraw my concurrence in the original opinion and respectfully dissent from the holding of the majority.

The majority opinion concedes that the right of trial by jury preserved by section 11 of the Constitution of 1901, inheres in the right involved, and not in the remedy affecting such right, and that this section of the Constitution preserves the right of trial by jury where that right was provided and secured by the common law at the time the Constitution was adopted.

So the solution of the question turns upon the source and what constituted the common law, within the purview of this section when this state was formed and that section was first written into the Constitution of Alabama in 1819.

We find the answer to that question in the case of Ex parte Rhodes (Rhodes v. McWilson), 202 Ala. 68, 69, 79 So. 462, 463, 1 A. L. R. 568, in this language: "When the delegates to our first constitutional convention, who were the representatives of the people and not of the government to be created, were assembled in 1819, and were making our Constitution, there was then applicable in the Alabama territory a system of laws called 'The Law of the Land,' or 'Due Process of Law.' This consisted mainly of a great body of American laws, the American common law, together with some written laws, *the acts of the Alabama and Mississippi territorial Legislatures*, the Constitution of the United States, and the acts of Congress. The various phrases and clauses used by the convention to describe the reserved rights, liberties, immunities, and privileges then had well-known meanings; many of them are to be found in the Magna Charta and other charters of liberties then claimed by our ancestors, as a part of the law of the land; and many of them were then imbedded in the Constitution of the United States and had been construed by the Supreme Court of our country to mean what they meant at common law. It would be unreasonable to suppose that our Constitution makers used these phrases or clauses otherwise than as then defined by the common law or the law of the land. The first clause in the fifth section of the Bill of Rights, 'That the people shall be secure in their persons, houses, papers and possessions from unreasonable seizure or searches,' then had a well-known meaning, and the same phrase had been often defined by the courts, state and federal. It must be presumed that the makers of the Constitution adopted it under its then construction. If it was not intended to prevent the government then being formed from authorizing or legalizing arrests like this, then the part which applies to the seizure of the person is worthless. If the arrest under consideration was lawful, or can be made so without amending the Constitution, then this guaranty of the Bill of Rights has failed of its purpose, to secure the people from unreasonable arrests." (Italics supplied.)

While the court, in that case, was dealing with section 5 of the Bill of Rights securing the person against unreasonable seizure, the principle stated is equally applicable here.

Among other acts of the territorial Legislature constituting a part of the law of the land—the common law of Alabama—was the territorial act of 1807, securing to attorneys at law the right to trial by jury in disbarment proceedings, and when the Constitution makers wrote into the Constitution, "That the right of trial by jury shall remain inviolate," they no doubt used this language in the light of the existing law—the law of the land—and intended to preserve this right to the people out of the powers of the government which they were then forming.

The principle that the statutes enacted by the territorial Legislature, that were in force when the state of Alabama was established and its government was formed, were a part of the law of the land, is clearly recognized in State v. Cawood, 2 Stew. 360, Carter & Wife v. Balfour's Adm'r, 19 Ala. 814, and Horton v. Sledge, 29 Ala. 478.

This principle is generally recognized, to quote from 5 Ruling Case Law, page 817, § 10: "It is well established that the common law includes not only the lex non scripta * * * but so much of the written *statute law* of England as had been passed in aid of or to supply the defects of the common law, prior to its adoption in this country, and which was not merely local in character or inapplicable to American institutions and conditions; but not those statutes passed subsequently." Cases cited notes 8 and 9, p. 818.

The Constitution of 1819 expressly adopted the existing laws in force in the territory at the time of its adoption, reserving in the Con-

stitution the right to change the same by subsequent Legislatures, except as those laws which are preserved as "inviolate" by the Constitution itself. This preserved the right of trial by jury to attorneys at law in disbarment proceedings.

I, therefore, hold that the act entitled "An Act To provide for the organization, regulation and government of the State Bar including admissions and disbarments of lawyers" (Acts of 1923, page 100), authorizing the disbarment of attorneys at law by the bar. commission, violative of section 11 of the Constitution.

This act neither in its body nor title deals with the inherent power of this court, nor does it purport in any way to extend such inherent power to the subject-matter of the enactment through the "organized bar," and in my judgment the discussion of the court's inherent power is wholly beside the question.

I therefore respectfully dissent on the question discussed.

### On Further Rehearing.

BOULDIN, Justice.

I concur in the opinion written by Justice KNIGHT, and desire to add the following.

The ordinance of 1787, for government of the northwest territory, saying: "The inhabitants of said territory shall always be entitled to * * * trial by jury," can mean no more than right of trial by jury as at common law, the law then in force. The act establishing Mississippi territory, extending thereto the same guaranties granted the Northwest territory, means the same, as of course.

The act establishing Alabama territory provided merely that the territorial laws should continue in force "until otherwise provided by law."

The Schedule to the Constitution of Alabama, 1819, § 5, the same Constitution guaranteeing the right of trial by jury, provided that territorial laws should be continued in force "until * * * altered or repealed by the Legislature thereof."

It is a strained construction which would limit this right of repeal expressly declared. The provision putting territorial laws into effect provided for this repeal. The right of trial by jury, conferred by territorial law, in derogation of the common law, is within the terms of the Constitution recognizing the power of the Legislature to repeal the same as other territorial laws. In my opinion, therefore, the right of trial by jury in Alabama is that obtaining at common law.

An integrated bar, charged with some responsibility and duty in maintaining its own standing and character, is a natural and obviously proper system, now being adopted by many states. Our system recognizes the complete supervision of this court on appeal as of right, or on its own motion to review the decisions of the bar association in disbarment proceedings.

The Constitution vests in this court supervisory jurisdiction over other courts.

The disbarment rules, so far as framed by the bar association, are subject to the approval of this court, indeed may be termed court-made rules.

The essential and fundamental relations of members of the bar to the courts and the administration of justice are such that courts cannot abrogate the duties growing out of same without a disregard of their own duties to the public.

In many cases members of the bar may have grave need for the sobered judgment of the courts in such matters. Betimes the courageous discharge of duty by an attorney under conditions of inflamed popular feeling, may lead to persecution for duty performed. The bar should have no fears of its own organization, supervised by this court.

Justice GARDNER concurs in this additional opinion.

### On Application for Rehearing by State Bar Commission.

PER CURIAM.

On application for rehearing filed on behalf of the board of commissioners of the state bar, we are asked to reconsider our judgment on last rehearing, wherein the judgment of disbarment was modified to one of suspension from the practice of law.

To temper justice with mercy is but to respond to our best impulses in all the affairs of life. In so doing, however, our solicitude must take a wide range; must compass the import of our judgments on the justice and mercy which shall find expression in the wide fields to which they relate.

The professional misconduct now before us, clearly proven, goes to the integrity of the lawyer in his dealings with his clients, a fidelity so fundamental as to be expressly embodied in the attorney's oath on admission to the bar.

Fidelity to trust in general may be said to be the only foundation upon which an enduring structure of civilization can stand. The position of trust between lawyer and client is peculiarly exclusive, intimate, and sacred.

The lawyer becomes the spokesman, the advocate, the champion of the rights of his cli-

ent in a forum where no one else can enter, and where the client, for want of special learning, cannot take care of his own interests.

State authority certifies to its citizenship the fitness and character of the attorney.

The basis of confidence in the administration of justice becomes gravely involved.

We are impelled to conclude that our last judgment should be, and it is, modified to the extent that after the termination of the period fixed for such suspension, appellant shall not be automatically reinstated, but such suspension shall continue until he shall make proper proof of good character and fitness, submitted to the bar commission for their action subject to review by this court.

All the Justices concur.